**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

| | |
|---|---|
| SKYPOINT ADVISORS, LLC., | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| | ) |
| *v.* | ) Case No. 2:18-cv-00356-JES-MRM |
| | ) |
| | ) |
| 3 AMIGOS PRODUCTIONS, LLC, *et al.* | ) |
| | ) |
| *Defendants.* | ) |
| | ) |
| | ) |

---

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A**
**SECOND AMENDED COMPLAINT AND**
**INCORPORATED MEMORANDUM OF LAW**

---

Defendants, 3 Amigos Productions, LLC ("3 Amigos"), BlackburnSteele, LLC ("Blackburn"), and Mark C. Crawford ("Crawford"), by and through undersigned counsel, and pursuant to Rule 15(a) of the Federal Rules of Civil Procedure and Middle District Local Rule 3.01, hereby oppose the motion of Plaintiff Skypoint Advisors, LLC ("Plaintiff" or "Skypoint") for leave to file a second amended complaint.

Plaintiff's motion should be denied on grounds both of futility of amendment and bad faith. Plaintiff's proposed Second Amended Complaint ("SAC") not only fails to add material new allegations sufficient to cure the numerous glaring deficiencies outlined in Defendants' Motion to Dismiss ("MTD") the first Amended Complaint ("AC"), but clumsily recasts the allegations of the AC in a way which directly and repeatedly contradicts the very allegations certified previously in both the original complaint ("OC") and the AC. Defendants' MTD explained at length why

sanctions should be imposed on Plaintiff; Plaintiff's motion and proposed SAC undercut the integrity of all Plaintiff's submissions, putting Plaintiff even deeper into the sanctions hole than it had already dug itself.

In addition, Plaintiff's bald contentions regarding Defendants' alleged non-compliance with Local Rule 3.01 carry little weight.  Plaintiff fails to explain why Defendants' entire MTD does not fall under the enumerated exceptions to the requirement to confer with opposing counsel, or why that alleged failure should have any impact where such conferral is pointless, in light of prevailing case law.

I.    **Plaintiff's Motion to File a *Second* Amended Complaint Should be Properly Denied**

Plaintiff, which has already once amended its complaint (the AC), cites only the permissive half of the rule regarding further amendment based on *Foman v. Davis*, 371 U.S. 178, 182, (1962). However, a motion for leave to amend may appropriately be denied "(1) where there has been undue delay, **bad faith**, dilatory motive, or repeated **failure to cure deficiencies by amendments previously allowed**; (2) where allowing amendment would cause **undue prejudice** to the opposing party; or (3) where amendment would be **futile**." *In re Engle Cases,* 767 F.3d 1082, 1109 (11th Cir. 2014); *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (emphasis added).  Thus, there are ample applicable grounds on which to deny Plaintiff's motion.

A.  **Plaintiff's Proposed Second Amended Compliant is a Model of Bad Faith**

Typically, an amended complaint adds allegations of factual support to supplement what was previously alleged.  Here, however, Plaintiff takes a novel approach: the proposed SAC contains wholesale changes to allegations which directly contradict what was alleged in both the OC and the AC, and which Plaintiff's counsel, by signing those complaints, "certifie[d] that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under

the circumstances…the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b). Now, Plaintiff's counsel certifies "amended" factual contentions fundamentally inconsistent with its earlier certified allegations.

The common law principle of *falsus in uno, falsus in omnibus* ("false in one thing, false in everything") is useful here. At best, only one version of Plaintiff's contradictory allegations can be true; one version—more precisely, *at least* one version—must be false. Any presumption of Plaintiff's good faith in proposing such amendments as set forth in the SAC has disappeared.

Recognizing the difficulties pointed out in Defendants' MTD of alleging securities fraud based on statements of future projected events or expectations of future conditions which then fail to develop, as Plaintiff alleged *twice* previously, Plaintiff simply changes those allegations from projected future developments to allegations of statements of already-existing facts at the time of the investment. Thus, we find the following AC allegations "amended" in the SAC as follows:

1) OC ¶ 29, and amended slightly in AC ¶ 17(g), "that the Project *would meet* all of its pre-sale forecasts in substantial part because Gabriel Garko, a preeminent Italian actor, *would be* playing a major role in the Project resulting in additional *projected* revenues of two to three million dollars in the Italian market alone," "amended" in SAC ¶ 16(g) to "Gabriel Garko, a preeminent Italian actor, *is* playing a major role in the Project and therefore pre-sale forecasts *"have been met"* resulting in additional [deleted: *"projected"*] revenues of two to three million dollars in the Italian market alone;"

2) AC ¶ 17(a), that the Project was *almost* fully funded, and that "Skypoint's then proposed $50,000 investment *would be* the final investment…and that Skypoint *would be* the final investor accepted…" "amended" in SAC ¶ 16(a) to "Skypoint's then proposed $50,000 investment *was* the final investment…and that Skypoint *was* the final investor accepted…"

3) OC ¶ 21, and again in AC ¶ 21, that Defendants "made false representations about the *estimated* return on investments," "amended" to SAC ¶ 20 "made false representations about *the circumstances upon which* the estimated return on investment *was based...*"

4) OC ¶ 18,  and again in AC ¶ 28, "that 3 Amigos *would keep* thorough and transparent bookkeeping during its performance of the Agreement including keeping accurate books, budgets, and contracts which *would be made available* for review by Skypoint," "amended" to SAC ¶ 27 "that 3 Amigos *kept* thorough and transparent bookkeeping during its performance of the Agreement including keeping accurate books, budgets, and contracts which *can be made* available for review by Skypoint."

5) OC ¶ 26, and again in AC ¶ 36, that "Skypoint made several requests to review film contracts and substantiate 3 Amigos and its managing members' representations that it had a contract with Karo Films *which would secure* over twenty million dollars ($20,000,000.00) of revenue for the Project and that it also had a contract with Fantastic Films International *which would secure* over four million dollars ($4,000,000.00)" "amended" to SAC ¶ 38, that "Skypoint made several requests to review film contracts and substantiate 3 Amigos and its managing members' representations that it had a contract with Karo Films which *secured* over twenty million dollars ($20,000,000.00) of revenue for the Project and that it also had a contract with Fantastic Films International which *secured* over four million dollars ($4,000,000.00)."

The existence of securities fraud may hinge on the difference between *projections* of future developments which do not materialize and *already-existing* facts; similarly, Plaintiff's baseless, wholesale amendments which transform existing allegations of projections into statements of already-existing fact essentially constitutes "securities *litigation* fraud"—allegations materially changed in bad faith, without basis and which contradict previously certified contentions.  The Court need not "freely give leave" to amend as such under Rule 15(a)(2).  To the contrary, "justice so requires" the denial of such patently bad faith amendment.

### B.  Plaintiff's Proposed SAC Demonstrates that Amendment Would be Futile

Defendants' MTD provided a long list of deficiencies in the AC mandating dismissal. Plaintiff's proposed SAC does not add the substantial additional allegations needed to cure these deficiencies.  "[A] district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile," such as "when the complaint as amended is still subject to dismissal" because, for example, it fails to state a claim for relief. *Chang v. JPMorgan Chase*

*Bank, N.A.*, 845 F.3d 1087, 1093–94 (11th Cir. 2017) (citing *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004)).

A claim is "futier" if it cannot withstand a motion to dismiss. *Carbiener v. Lender Processing Servs., Inc.*, 2014 WL 12616966, at *3 (M.D. Fla. Sept. 29, 2014) (citing *Fla. Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996)). Amendment is futile "when the complaint as amended is still subject to dismissal." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004)). Leave to amend may be denied "if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim*." Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008).

Even in the SAC, the same deficiencies are found. As explained fully in Defendants' MTD, Plaintiff still utterly fails to make allegations of material misstatements or omissions with the required specificity of time, place, content and speaker as required under the federal securities laws, state securities laws, state claims for fraud, Rule 9(b) and the PSLRA. Plaintiff has still not sufficiently alleged scienter, reliance or loss causation. Further, Plaintiff continues to rely upon certain allegations of facts which only occurred after Plaintiff made its investment. Finally, Plaintiff has not explained the conveniently rapid inflation of amount in controversy from its $50,000 investment, as stated in both its demand letter and the OC, to $90,000 in the AC and SAC.

Other than improperly changing the allegations cited above, transforming allegations of statements regarding future projections into misstatements of already-existing facts, Plaintiff's proposed amendment adds little. It is telling that Plaintiff evidently considered the previous allegations of the AC as insufficient to state a claim, thus requiring further amendment. But the proposed SAC does not state a claim any better than the AC did; it merely repackages the facts previously alleged, and is similarly still subject to dismissal. "Plaintiff seeks improper relief and

the facts are merely repackaged without offering any relevant basis for a different outcome...Plaintiff's request for leave to amend the complaint is denied." *In re Kidd*, 2012 WL 909691, at \*2 (Bankr. N.D. Ga. Feb. 8, 2012).

Furthermore, Plaintiff has already amended once; there is no reason Plaintiff could not have supplemented the original complaint with allegations sufficient to state a claim—had such facts existed.  "Judicial economy and the plaintiff's previous opportunity to amend the complaint can serve as additional factors to be evaluated with a motion requesting leave to amend the complaint." *Id.,* at \*3 (citing *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir.2005)). Similarly, here, Plaintiff's inability to provide factual allegations sufficient to state a claim, even when given the chance to amend, is reason to deny leave for further amendment which, as seen from the SAC, is also bound to be futile.

### C.  The "Gamesmanship" in this Litigation is *Not* Coming from Defendants

Plaintiff accuses Defendants' counsel of "gamesmanship" for initially indicating an intent to file an answer to the AC, but then, after more careful review, deciding to timely file the MTD. Motion at ¶3. However, the context of counsel's communication was in Defendants requesting Plaintiff's agreement to an extension of time to respond to the AC. But Plaintiff would not agree to the requested extension. Regardless, how Defendants chose to respond to the AC does not in any way change the insufficiency of the Plaintiff's AC or amount to "gamesmanship."

What does seem like gamesmanship, however, is Plaintiff's manner of litigating this matter, which seems aimed primarily at driving up Defendants' litigation costs.  As pointed out in the MTD, Plaintiff has cobbled together some dubious factual allegations and all manner of claims, each of which must be carefully opposed by Defendants at significant expense.  Plaintiff seems to do so without so much as bothering to determine whether the allegations satisfy the basic standards

of pleading such claims, determining whether such claims are time-barred, or whether an alleged statutory violation even carries a private right of action.

This is now Plaintiff's proposed third attempt at filing a viable complaint. Each time, Plaintiff's counsel has certified the complaint under Rule 11. Yet, each time, the complaint provides a different—and then disappearing—target.

The initial complaint was premised on violations of securities laws which, as Defendants pointed out in their first motion to dismiss, could only be pursued by the SEC. That claim disappeared from the AC. However, in the AC, Plaintiff asserted newly discovered (though still unexplained) amounts of damages which just happened to dramatically exceed not only the total plaintiff initially demanded, but also exceed the amount in controversy necessary to establish federal jurisdiction.

Plaintiff also brought new claims in the AC based on alleged violations of different sections of the securities laws relating to selling unregistered securities and the alleged failure of Defendants to file a Form D; but in doing so, Plaintiff simply invented a cause of action for failure to file a Form D (contrary to the SEC's own rules), and ignored the statute of limitations spelled out in the allegedly-violated statutes. Defendants argued these defenses in the MTD, as well as pointing out that the movie—the production and alleged non-release of which underlies this entire litigation—*has now been released*. In the proposed SAC, *those* "new" securities claims disappeared; this time, however, it is the facts which have mutated, with Plaintiff now alleging misstatements of *existing* facts where previously had been only allegedly misleading *projections* of future developments. In addition, the SAC still leaves the misimpression that the film was never released.

In the MTD, Defendants set forth the case for sanctioning Plaintiff.  The motion for leave to amend and the proposed SAC only make those sanctions arguments stronger.  Defendants request that the Court put a stop to Plaintiff's own gamesmanship and deny the pending motion.

## II.      Plaintiff's Invocation of Local Rule 3.01 is Misplaced

Plaintiff makes much of the lack of Defendant's lack of conferral prior to filing the MTD, and not including a certificate of conferral therewith.  But Plaintiff does not satisfactorily explain why Rule 3.01 would require conferral prior to filing this MTD.  Rule 3.01(g), which mandates conferral prior to filing a motion, is generally applicable to issues such as discovery disputes or similar matters where arcane factual detail and disagreement may better and more efficiently be resolved by negotiation between the parties than by saddling the already-overburdened court with such matters.  Rule 3.01 specifically exempts motions for judgment on the pleadings, for dismissal for failing to state a claim, and generally for involuntary dismissal of actions—situations where conferral between counsel is pointless due to broad and irreconcilable differences over fundamental interpretations and applications of law.

Plaintiff offers no authority supporting its assertion that the MTD does not fall under the conferral exceptions in Rule 3.01 for motions to dismiss.  Rule 3.01 specifies that a motion to dismiss under Rule 12(b)(6), such as the MTD, is exempt from conferral.  Defendants' 12(b)(1) motion is intertwined with that under 12(b)(6)—either Plaintiff has made out a claim under the federal securities laws which would allow for federal jurisdiction, or has not, and no federal question is at issue.  Defendants' 12(b)(2) argument regarding personal jurisdiction simply follows from successfully arguing failure to state a claim and lack of subject matter jurisdiction under 12(b)(6) and 12(b)(1); it hardly changes the essence of the MTD from what it self-evidently is: a motion to dismiss for failure to state a claim under Rule 12(b)(6) as well as on jurisdictional

grounds, exempt from pre-filing conferral with opposing counsel.  This Court has held that a dispositive motion to dismiss even on grounds beyond Rule 12(b)(6) carries no duty to confer under Rule 3.01. In discussing a motion to dismiss under Rule 12(b)(1), the Court held: "Here, the Defendant's Motion is clearly a dispositive motion to dismiss. Therefore, the Defendant was not under an obligation to confer with the Plaintiffs prior to filing the instant Motion." *Schriever v. Navient Solutions, Inc.,* 2014 WL 7273915, *3 (M.D. Fla. Dec. 19, 2014).

Furthermore, even assuming, *arguendo,* that such a conferral was required for a *portion* of the MTD, that does not imply that failure to confer in our context results in any sanction or striking of the MTD, especially as such a conference would have been futile. *See, e.g.,  Lifetime Homes, Inc. v. Residential Dev. Corp*., 510 F. Supp. 2d 794, 800 n.4 (M.D. Fla. 2007) (denying motion to strike based upon failure to meet and confer before filing summary judgment motion because striking "is a severe sanction that does not appear to be justified in the present case."); *Domke v. McNeil-P.P.C., Inc*., 939 F. Supp. 849, 851 (M.D. Fla. 1996) (denying motion to strike for failure to meet and confer because it "is clear by the Defendant's subsequent opposition that there would have been no agreement or resolution of the motion."); *Ware v. United States*, 152 F.R.D. 225, 226 (M.D. Fla. 1993) ("[W]hile it may be true that Plaintiff did not strictly comply with the requirements of Rule 3.01, it would be improper to strike the motion for leave to amend on this basis. It is evident ... that no resolution of this matter would have come about had counsel conferred prior to the filing of Plaintiff's motion.").  As in *Lifetime, Domke, and Ware*, any conference with Plaintiff's counsel would have been futile because the parties differ so significantly, as is evident from the proposed SAC.

## CONCLUSION

For all of the reasons stated herein, as well as reasons set forth in Defendants' MTD, Defendants respectfully request that Plaintiff's Motion for Leave to File a Second Amended Complaint be denied in its entirety.

Respectfully submitted,

**/s/ Katherine C. Donlon**
L. Marc Zell, specially admitted *pro hac vice*
34 Ben Yehuda Street
Jerusalem 9423001 ISRAEL
Tel. 011-972-2-633-6300
Fax.: 011-972-2-672-1767
Email: mzell@fandz.com

and

Katherine C. Donlon
WIAND GUERRA KING
Florida Bar ID No.: 0066941
5505 W. Gray Street
Tampa, FL 33609
Phone: 813.347.5104
Fax: 813.347.5154
Email: kdonlon@wiandlaw.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 16, 2018, I electronically filed the foregoing with the Clerk of the Court by using the Court's CM/ECF. I certify that all participants required to be served in the case are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system.

**/s/ Katherine C. Donlon**
Katherine C. Donlon
WIAND GUERRA KING
Florida Bar ID No.: 0066941
5505 W. Gray Street
Tampa, FL 33609
Phone: 813.347.5104
Fax: 813.347.5154
Email: kdonlon@wiandlaw.com

*Counsel for Defendants*