IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SKYPOINT ADVISORS, LLC.,

     Plaintiff,

                                    Case No. 2:18-cv-00356-JES-MRM

v.

3 AMIGOS PRODUCTIONS, LLC., et al.

     Defendants.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANTS' DISPOSITIVE MOTION
TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

     **COMES NOW**, the Plaintiff, SKYPOINT ADVISORS, LLC., and hereby files

Plaintiff's Response to Defendants' Dispositive Motion to Dismiss the Third Amended

Complaint and Incorporated Memorandum of Law, and states as follows:

1.     On May 21, 2019, the defendants, 3 AMIGOS PRODUCTIONS, LLC. ("3 Amigos"),

BLACKBURNSTEELE, LLC. ("Blackburn"), ISSA ZAROUI ("Zaroui"), and MARK C.

CRAWFORD ("Crawford") (collectively "Defendants") filed Defendants' Dispositive

Motion to Dismiss Plaintiff's Third Amended Complaint and Incorporated

Memorandum of Law ("TAC") (Doc. 93) with prejudice. (Doc. 96) ("Motion").

2.     Therein, Defendants assert: (1) Count I fails to satisfy the pleading requirements

of a Section 10(B) Claim; (2) there is no basis for diversity jurisdiction; (3) Counts II and

III fail to state a cause of action and fail to meet the Rule 9 pleading requirements; and (4) this Court lacks personal jurisdiction over Blackburn, Crawford, and Zaroui.

3.   On April 9, 2019, this Honorable Court entered an Opinion and Order ("Order") (Doc. 92) dismissing Plaintiff's Second Amended Complaint ("SAC") without prejudice reviewing nearly the same grounds asserted in Defendants' Motion. In its Order, the Court addressed the pleading deficiencies of the SAC and Plaintiff, in drafting the TAC, was mindful of the Court's Order and ensured that the TAC met the Court's holding and reasoning regarding the pleading deficiencies the Court noted through its Order regarding the SAC.

4.   Parenthetically, Defendants continue to place significant reliance, without substance, on the superseded allegations of Plaintiff's prior pleadings. Plaintiff will not address Defendants' assertions regarding prior superseded pleadings as they have no bearing on the instant Motion to Dismiss and are clearly presented before this Court in Defendants' effort to confuse the issues. *See Seiger v. Philipp*, No. 17-10782, *2 (11th Cir. 2018); and (Order, p. 12 fn. 2).

5.   When mischaracterizations and theatrics are distilled from Defendants' Motion, the essence of a bulk of their arguments regarding Section 10(B) pleadings were already addressed by this Court. The only new argument, which is surprisingly addressed for the first time at this stage, is that Crawford is now allegedly domiciled in Albania and therefore diversity jurisdiction would be destroyed. As set forth below, it is clear that

Crawford's domicile argument is a recent willful fabrication supported only by a self-serving declaration.

6.   Moreover, since Plaintiff corrected the deficiencies point out in the Order in the TAC, Plaintiff has invoked this Court's federal jurisdiction in Count I and, therefore, the Court has supplemental jurisdiction as to the remainder of the claims rendering the entirety of Crawford's new found spurious argument moot.

I.   **Count I States a Cause of Action for Violations of Section 10(b) of the Securities Exchange Act of 1934**

   a.   *The TAC Meets the Specificity Requirements of Rule 9 and the PSLRA*

7.   To state a claim for securities fraud under § 10(b) and Rule 10b-5, a plaintiff must allege adequately:

> (1) a material misrepresentation or omission; (2) scienter—a wrongful state of mind; (3) a connection between the misrepresentation and the purchase or sale of a security; (4) reliance [...] (5) economic loss; and (6) "loss causation, i.e., a causal connection between the material misrepresentation and the loss."

*Meyer v. Greene*, 710 F.3d 1189, 1194 (11th Cir. 2013).

8.   An action alleging securities fraud is subject to the pleading requirements of Rule 9(b), which requires a complaint "to state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The purpose of Rule 9(b) is to ensure allegations of fraud are specific enough to provide sufficient notice of the acts complained of and

eliminate those complaints filed as a pretext for discovery of unknown wrongs." *SEC v. Ginsburg*, Case No. 99-8694-CIV, *2 (S.D. Fla. Jan. 10, 2000).

9.   Pleading fraud with particularity does not require pleading "detailed evidentiary matter." *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 n.20 (2d Cir. 1979). A complaint pleads fraud with particularity if it alleges the substance of the fraudulent acts, who engaged in the fraud, and when the fraud occurred. *Hekker v. Ideon Group, Inc.*, Case No. 95-681-Civ, *4 (M.D. Fla. Aug. 19, 1996).

10.  Critically, "the Eleventh Circuit stated that '[a]llegations of date, time or place satisfy the Rule 9(b) requirement that the circumstances of the alleged fraud must be pleaded with particularity, **but alternative means are also available to satisfy the rule**.' The Eleventh Circuit approves this alternative means[.]" *Colonial Penn Ins. Co. v. Value Rent-A-Car Inc.*, 814 F. Supp. 1084, 1092 (S.D. Fla.  1992)(emphasis added)(citing *Seville Industrial Machinery Corp. v. Southmost Machinery*, 742 F.2d 786 (3rd Cir.1984)(list containing allegations of fraud **describing nature and subject of statements found to be sufficient, even where precise words used were not alleged**)(emphasis added).

11.  In addition, the PSLRA provides for Rule 10b-5 claims predicated on allegedly false or misleading statements or omissions: "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."

15 U.S.C. § 78u-4(b)(1). "The PSLRA did not alter the required presumption that the court "give Plaintiffs, not Defendants, the benefit of every favorable inference that can be drawn from their allegations." *In re Cataline Marketing Corp. Sec. Lit.*, 390 F. Supp. 2d 1110, 1114 (M.D. Fla. March 31, 2005).

12.    In this case, the Court, in its Order, set forth the requirements of Rule 9 and the PSLRA (Order, pp. 5-6) and reviewed the SAC for pleading deficiencies under Rule 9. The Court determined "**while the Second Amended Complaint identifies the alleged misrepresentations and the general timeframe in which they took place, it fails to identify who made the misrepresentations beyond a general accusation against all the defendants.**" (Order, p. 8) (emphasis added). Moreover, the Court determined that the SAC was deficient under the PSLRA because Plaintiff failed to state "with particularity all facts on which that belief is formed" regarding an allegation based upon information and belief. (Order, p. 9).

13.    In their Motion to Dismiss, Defendants assert the "TAC's allegations overwhelmingly make no distinction between speakers, content, time date, or manner of alleged misstatements." (Motion, p. 12). Defendants further argue "[a]lmost no specifics are offered as to who in particular made *any* particular representation, or when, or in what manner, or how they were misleading." (Motion, p. 12).

14.  Defendants' bare assertions are patently false. In conformance with both Rule 9 and this Court's Order, the TAC sufficiently describes the nature and substance of each

misrepresentation and provides how and when each one of the Defendants, Zaroui, Crawford, Blackburn, and 3 Amigos, knowingly made false statements of material fact to Plaintiff from November 2016 to January 2017, and further how each misrepresentation was made by each Defendant, and how each misrepresentation made was misleading.(TAC, ¶¶ 16-20(a)-(j)).

15.  Similarly, in *In re Checkers Securities Litigation*, this Court found misrepresentation was sufficiently pled where plaintiffs alleged that "during the period of November 22, 1991 through October 8, 1993 Checkers, officers and/or directors of Checkers, and KPMG Peat Marwick 'acted in concert' to falsify Checker's financial statements by systematically overstating revenue and understating expenses." *In re Checkers Securities Litigation*, 858 F. Supp. 1168, 1174-76 (M.D. Fla. 1994). In reaching its holding, this Court reasoned "allegations which provide a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud are sufficient." *Id*. at 1175.

16.  Moreover, in conformance with the PSLRA, the TAC specifies each statement alleged to have misled Plaintiff and that each listed statement was false when made, and as such, concealed adverse material information about the Project, the status of the Project, and the funds available for the Project. The TAC includes these as the reasons why each statement was misleading. (TAC, ¶¶ 16-20(a)-(j)). *See In re PSS World Med., Inc. Sec. Litig.*, 250 F. Supp. 2d 1335, 1349-50 (S.D. Fla. 2002) (finding that the complaint met all PSLRA requirements by stating sufficient facts related to scienter and specifying "the allegedly

misleading statements and why the Plaintiffs believe they were misleading[.]"). Further, regarding the misstatements relating to the non-existence of distribution company contracts, Plaintiff thoroughly set forth with particularity all facts upon which that belief is formed. (TAC, ¶¶ 42 and 43).

### b. *The TAC Sufficiently Pleads Scienter*

17. Regarding scienter, a complaint must present facts from which "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Scienter may be inferred from the aggregation of all alleged particularized facts in the complaint. *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1017 (11th Cir. 2004).

18. "Stated differently, in order to sufficiently allege scienter, a plaintiff must allege facts from which a reasonable person would infer that it is at least as likely as not that the individual high-ranking defendants either orchestrated the alleged fraud (and thus always knew about it), learned about the alleged fraud, or were otherwise severely reckless in not learning of the alleged fraud when they made the purportedly false or misleading statements." *See Richard Thorpe & Darrel Weisheit v. Walter Inv.*, 111 F. Supp. 3d 1336, 1359 (S.D. Fla. June 30, 2015).

19. The TAC lists actionable misrepresentations attributed to each of the Defendants, the circumstances upon which they were made (TAC, ¶¶ 16-20(a)-(j)), and that such

misrepresentations made by each Defendant "were made with the intent to deceive, manipulate, or defraud Skypoint" (TAC, ¶ 67) and that Defendants' misrepresentations were made "for the purpose and effect of concealing information regarding the Projects' true status as a façade and vehicle for fraud and theft." (TAC, ¶ 66).

20.  Similarly, in *Checkers*, this Court held scienter was sufficiently pled where plaintiffs alleged defendants "employed a scheme to overstate revenues." *In re Checkers Securities Litigation*, 858 F. Supp. at 1176. *See* TAC ¶¶ 61, 62, 64, and 65). *See also Cook v. Campbell*, 482 F. Supp. 2d 1341, 1351 (M.D. Ala. March 30, 2007).

21.  As such, the TAC presents sufficient allegations of misrepresentations and circumstances upon which they are based as to allow a reasonable person to deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the allegations.

### c. *The TAC Sufficiently Pleads Loss Causation*

22.  Regarding loss causation, "[l]oss causation is not subject to heightened pleading standards but must be supported by a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Meyer v. St. Joe Company*, Case No. 5:11-cv-27/RS-EMT., *2 (N.D. Fla. Jan. 12, 2012)(quoting *Dura Pharms., Inc.*, 544 U.S. at 346.). "[T]o sufficiently plead loss causation, Plaintiff must 'allege that the subject of the fraudulent statement or omission was the cause of the actual loss suffered[.]'" *Id*.

23. The TAC sets forth each misrepresentation attributed to each Defendant, how each misrepresentation made was misleading (TAC, ¶¶ 16-20(a)-(j)), that "[a]s a direct, proximate, and substantial result of 3 Amigos, Zaroui, BlackburnSteele, and Crawford's wrongful conduct, Skypoint suffered damages in connection with its investment in the Project" (TAC, ¶ 72), and that "[h]ad Skypoint known of Defendants' fraudulent practices, Skypoint would not have invested or otherwise acquired an interest in the Project." (TAC, ¶ 70).

24. As such, Plaintiff has sufficiently pled loss causation pursuant to *Meyer*.

### d. The TAC Sufficiently Pleads Reliance

25. "Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011). "The traditional (and most direct) way a plaintiff can demonstrate reliance is by showing that he was aware of a company's statement and engaged in a relevant transaction [] based on that specific misrepresentation." *Id*. at 2185.

26. The TAC states "Skypoint, in reliance of those representations, entered into a written agreement with 3 Amigos entitled Film Financing Agreement" (TAC, ¶ 19) and that "Skypoint reasonably relied" on Defendants' misrepresentations. (TAC, ¶ 28).

27. Moreover, the TAC alleges Plaintiff exercised reasonable diligence in its efforts to discover the truth of Defendants' individual misrepresentations. (TAC, ¶ 43).

28.  Defendants argue that allegations concerning revenues are not actionable, however Plaintiff's allegations regarding misrepresentations concerning revenue are actionable because of the falsity of the representations the revenues were based on, namely the non-existent contracts represented to be in place. (TAC, ¶¶ 20(g) and 43).

29.  As such, pursuant to *Halliburton*, Plaintiff has sufficiently alleged reliance.

30.  Notably, the issue of reasonable reliance "can depend on the sophistication of the parties, the nature of the transaction and a party's failure to make use of means of verification available to it, **the resolution of a dispute concerning such issues is rarely appropriate for a motion to dismiss**." *Sawabeh Information Services Co. v. Brody*, 832 F. Supp. 2d 280, 304 (S.D. NY 2011) (emphasis added).

## II.      There is Complete Diversity of the Parties Under 28 U.S.C. § 1332

31.    In their Motion to Dismiss, Defendants assert, for the first time, that Crawford is domiciled in Albania and therefore defeats diversity jurisdiction under 28 U.S.C. § 1332[1].

### a.   *Crawford is Domiciled in Ohio*

32.    In the event this Court determines it does not have supplemental jurisdiction under 28 U.S.C. § 1367, the Court still has jurisdiction under 28 U.S.C. § 1332 as Crawford is domiciled in Ohio.

---

[1]    Defendants assert Crawford has already submitted two previous declarations in this litigation relating to his Albanian residence and activities. However, those declarations (Doc. 23-1 and 33-1) only attest that Crawford "resides" in Albania and do not allege domicile in Albania. Now for the first time, Crawford alleges he is domiciled in Albania, not just residing there. The fact that he initially, in his previous two declarations, did not assert Albania is his domicile only exposes the willful fabrication of alleging it now.

33.     It is well-settled that "[d]iversity is to be determined at the time the complaint is filed." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 414 n. 2 (3d Cir.1999). "For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). Notably, "[d]omicile is not synonymous with residence; **one may temporarily reside in one location, yet retain domicile in a previous residence.**" *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F. 3d 1330, 1342-43 (11th Cir. 2011)(emphasis added).

34.     As such, "[a] person's domicile is the place of 'his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom....'" *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir.1974).

35.     In support of their diversity argument, Defendants rely on Crawford's self-serving declaration. (Doc. 96.1). Therein, Crawford sets forth his ties to Albania since 2010 and proclaims that he is domiciled in Albania and has "no current intent" of "moving" to Ohio. However, "[c]ourts generally **give little weight to a party's profession of domicile; they do so because these declarations are often self-serving.**" *Lama*, 633 F. 3d at 1342 (emphasis added). The *Lama* court further reasoned that courts do give weight to a party's professions of domicile when they work against the party. *Id.*

36.     The Declaration of Denis Dreni, attached herein as **Attachment A**, along with the Exhibits attached thereto, show that Crawford is and was domiciled in Ohio when the

instant action was filed. This conclusion is not only supported by Dreni's personal knowledge, but also by Crawford's own representations made to Federal Courts, Congress, and State agencies under oath and under penalty of perjury. Moreover, it is clear from the Blackburn Nevada Secretary of State filings that Crawford has attempted to manufacture documentary support for his position after this action was filed strictly to fight jurisdiction.

37.     The Declaration of Denis Dreni provides that Dreni has known Crawford since 2011 and since then has known Crawford and his family to maintain a permanent residence in Dayton, Ohio; that Dreni has known Crawford to travel to and have business dealings in Albania, but he has always represented that Ohio is his home; that Crawford has represented himself as an international business man based out of Dayton, Ohio; that he's known Crawford to leave and return to Ohio for foreign business travels approximately four times per year; and that he's known Crawford to maintain domicile in Dayton, Ohio despite him having a residence and business dealings in Albania.

38.     From Dreni's declaration, it is clear that while Crawford is an international business man, his principal establishment and domicile is Ohio and not Albania. *See Williamson v. Osenton*, 232 U.S. 619, 625 (1914)("The very meaning of domicil is the technically preeminent headquarters that every person is compelled to have in order that certain rights and duties that have been attached to it by the law may be determined.").

39.     This conclusion is also supported by Crawford's own filings and prior testimony before the Congress as mentioned in the paragraphs above.

40.     When this action was filed on May 22, 2018, the Nevada corporate records of Blackburn provided that Crawford was a managing member with his address listed in Dayton, Ohio. Crawford executed the corporate filing regarding his address at that time under penalty of perjury. (Declaration of Denis Dreni, Exhibits A & B).

41.     After the initiation of this lawsuit, Blackburn's Nevada corporate records reflected that Crawford's address was changed to Albania only on November 19, 2018. Crawford attests to have resided in Albania since 2010, but didn't change his address with the Nevada Secretary of State to Albania until after the Complaint was filed in this action. Notably, the October 6, 2017 Blackburn filing, signed by Crawford under the penalty of felony perjury, is for the period of November 2017 to November 2018 and lists Crawford's address as Ohio. (Declaration of Denis Dreni, Exhibit B). As such, Crawford's address at the time this action was filed is in Ohio.

42.     Additionally, Crawford's current Ohio voter registration reflects the same Ohio address. (Declaration of Denis Dreni, Exhibit C). In determining domicile, "the state in which an individual is registered to vote raises a presumption that the individual is a citizen of that state." *Peterson v. Paddy*, No. 3:16CV00026., *3 (W.D. Va. June 19, 2017)(citation omitted). *See also Bloom v. Library Corp.*, 112 F. Supp. 3d 498, 503 (N.D. W.V.

2015)(as to domicile "courts have found a party's voter registration and voting practices to be of particular importance.").

43.     Perhaps the strongest support that Crawford's domicile is Ohio comes from Crawford's own April 6, 2017 testimony before a congressional Subcommittee on Government Operation. (Declaration of Denis Dreni, Exhibits D & E). In his written statement, Crawford attested "I am an American citizen and international entrepreneur, **based in Dayton Ohio**. I do not have any other citizenship, though at **various times I have been a resident of** the UK, **Albania**, Montenegro, Macedonia and Greece." (Declaration of Denis Dreni, Exhibit. E, p. 1) (emphasis added). Crawford further attested "**[w]e are just Americans and though we are often far from home, America is still our home and the US Constitution is still our Constitution wherever we are.**" (Ex. E., p. 1) (emphasis added). Moreover, during his oral testimony, Crawford testified that he "returned to Albania in 2010 to pursue a business opportunity[.]" (Declaration of Denis Dreni, Exhibit D, p. 38).

44.     Crawford's own testimony before Congress acknowledges his dealings and residency in Albania since 2010 and makes it clear that his domicile is Ohio nonetheless. Crawford attests that he is based in Dayton, Ohio and that no matter how far he is from home, Ohio is still his home. *See King v. Cessna Aircraft Co.*, 505 F. 3d 1160, 1172 (11th Cir. 2007)(holding a United States citizen residing abroad in the exercise of some particular profession, office, or calling was still domiciled in California).

14

45.     Moreover, on July 14, 2015, Crawford, as well as his counsel in the instant action L. Marc Zell, both as plaintiffs, initiated a case by verified complaint in the United States District Court for the Southern District of Ohio, Civil Case No. 15-cv-250. Therein, Crawford attested that he lived in Albania at that time, but also maintained a residence in Dayton, Ohio (Ex. F, ¶ 13) and splits his time "between the United States and Europe[.]" (Ex. F, ¶ 20). (Declaration of Denis Dreni, Exhibit F).

46.     Under the foregoing circumstances, this Court should give absolutely no credit to Crawford's clearly self-serving declaration. Crawford cannot now, after the filing of this action, speciously assert his "current" domicile is Albania when the same foregoing circumstances existed prior and he asserted the opposite. It is apparent that Crawford's declaration is fabricated for the sole purpose of attempting to defeat diversity, which is also moot as there is federal jurisdiction under Count I and therefore supplemental jurisdiction for the other claims.

47.     Accordingly, Crawford's self-serving declaration is contradicted by his own prior testimony and statements under oath and under penalty of perjury and that, coupled with the Declaration of Denis Dreni and Exhibits attached thereto, support that Crawford is domiciled in Ohio and this Court has diversity jurisdiction.

### b. Stateless Citizen Doctrine

48.     In the event this Court determines it does not have supplemental jurisdiction under

28 U.S.C. § 1367, the Court should exercise jurisdiction under 28 U.S.C. § 1332 even if it

determines Crawford is domiciled in Albania.

49.     In their Motion, Defendants argue that Crawford's purported Albanian domicile

defeats diversity jurisdiction under *Lama*, which provides "U.S. citizens domiciled abroad

are neither 'citizens of a State' under § 1332(a) nor 'citizens or subjects of a foreign state'

and therefore are not proper parties to a diversity action in federal court." *Lama*, 633 F.

3d at 1342.

50.     This stateless citizen principal has been described as "a loophole in 28 U.S.C. §

1332" *Meyers v. Smith*, 460 F. Supp. 621, 624 (D. D.C. 1978) and Plaintiff asserts this Court

should view the "stateless" position as between described in *Coury* and *Sadat*, supra,

rather than *Lama*. *See Southern Cross Overseas Agencies v. Wah Kwong Shipping Group*, 181

F. 3d 410, 415 (3d Cir. 1999)(" Most courts have accepted the proposition that the problem

of 'statelessness' was unanticipated by the Framers, because it is a twentieth-century

phenomenon.").

51.     This concept appears to be born of the holding that "**the dual citizen** should not be

allowed to invoke alienage jurisdiction because this would give him an advantage not

enjoyed by native-born American citizens." *Coury v. Prot*, 85 F. 3d 244, 250 (5th Cir. 1996).

*See Sadat v. Mertes*, 615 F.2d 1176 (7th Cir.1980)( for a dual national citizen, only the American citizenship is relevant for purposes of diversity under 28 U.S.C. § 1332.).

52.     This concept is logical under the dual citizen scenario, however application thereof to a United States citizen domiciled abroad leads to an illogical result not intended under 28 U.S.C. § 1332. "[T]he major purpose of alienage jurisdiction is to promote international relations by assuring other countries that litigation involving their nationals will be treated at the national level, and alienage jurisdiction is also intended to allow foreign subjects to avoid real or perceived bias in the state courts — a justification that should not be available to the dual citizen who is an American." *Coury*, 85 F. 3d at 250.

53.     Since Crawford is not a dual citizen, this Court must determine whether he is a subject of a foreign nation and give up on the analysis suggesting statelessness. Under 28 U.S.C. § 1332, the terms "citizen" and "subject" "are meant to encompass persons living under distinct forms of government[.]" *Matimak Trading Co. v. Khalily*, 118 F.3d 76, 85 (2d Cir. 1997). This principal was set forth by the United States Supreme Court in *The Pizzaro*:

> **a person <u>domiciled</u> in a country, and enjoying the protection of its sovereign, is deemed a subject of that country.** He owes allegiance to the country, while he resides in it; temporary, indeed, if he has not, by birth or naturalization, contracted a permanent allegiance; but so fixed that, as to all other nations, he follows the character of that country, in war as well as in peace. [] We should, therefore, have no hesitation in over-ruling this objection, **even if it were proved that Mr. Hibberson <u>was not a naturalized subject of Spain</u>; but we think the presumption very strong that <u>he had become, in the strictest sense of the words, a Spanish subject</u>.**

*The Pizarro*, 15 U.S. 227, 246 (1817)(emphasis added).

54.    In this case, if Crawford is to be considered as a United States citizen domiciled in Albania, he is not subjected to the dual citizen principal. Rather, he should be considered a subject of Albania under his professed ties thereto and diverse as a subject of a foreign state under 28 U.S.C. § 1332(a).

55.    The Court need not reach this issue as there exists federal and supplemental jurisdiction, as well as the sufficiently supported justification for diversity jurisdiction. In the event the Court does reach this issue, Plaintiff asserts this Court should view the argument properly under *Sadat* and find that Crawford is a subject of a foreign state and therefore diversity applies as state in *The Pizarro*.

### III.    Counts II & III State a Cause of Action

56.    Defendants assert Counts II and III of the TAC fail to meet the Rule 9 pleading requirements. As argued above in Section I as to the application of Rule 9 to Count I, Defendants' argument as to Counts II and III fails for the same reason.

57.    The allegations of Counts II and III sufficiently meet the requirements of Rule 9.

58.    In conformance with Rule 9, the TAC describes the nature and substance of the misrepresentations and provides that each of the Defendants, Zaroui, Crawford, Blackburn, and 3 Amigos, all knowingly made false statements of material fact to Plaintiff from November 2016 to January 2017, a three-month period. (TAC, ¶¶ 16-20(a)-(j), 73,

88). The TAC then goes on to state how and when each individual Defendant made each individual statement. (TAC, ¶ 20(a)-(j)).

### IV.    This Court has Personal Jurisdiction over Blackburn, Zaroui, and Crawford

59.   "A plaintiff seeking to establish personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction. [] When a defendant challenges personal jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (internal citation omitted).

60.   If the Complaint and defendant's evidence are in conflict, "the district court **must construe all reasonable inferences in favor of the plaintiff**." *Thomas v. Brown*, 504 F. App'x 845, 847 (11th Cir. 2013)(emphasis added).

61.   "The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis by the federal courts. First, we must examine the jurisdictional issue under the state long-arm statute. Second, we must ascertain whether or not sufficient 'minimum contacts' exist to satisfy the Due Process Clause of the Fourteenth Amendment so that 'maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" *Cable/Home Communication Corp. v. Network Productions*, 902 F. 2d 829, 855 (11th Cir. 1990)(internal citations omitted).

62. As to the first prong, the Eleventh Circuit has "noted that Florida's long-arm statute, Fla. Stat. § 48.193(1)(b), permitted the exercise of jurisdiction over actions arising out of tortious acts committed within Florida." *Internet Solutions Corp. v. Marshall*, 611 F. 3d 1368, 1370 (11th Cir. 2010). The Eleventh Circuit further "recognized that **the defendant was not required to be within the state for the tortious act to occur within the state because a cause of action could arise from an act through the nonresident defendant's electronic, telephonic or written communication into Florida.**" *Id.* (emphasis added).

63. In *Marshall*, the Florida Supreme Court unequivocally held:

> The determination of whether certain acts constitute communications into Florida is **straightforward when the case concerns telephonic communications, written communications, or electronic communications in the form of e-mails or facsimiles**, because those communications are directed to reach a specific recipient in a specific forum; in other words, it is clear that the nonresident defendant's communications were made into Florida.

*Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1208 (Fla. 2010)(emphasis added).

64. As to the second prong, "[d]etermining minimum contacts requires examining the 'quality and nature' of the nonresident defendant's activity, with the essential finding that the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State[.]" *Cable/Home Communication Corp.*, 902 F. 2d at 858.

65. Critically, "[a] significant single act or meeting in the forum state has been held sufficient for personal jurisdiction there [...], physical presence by the nonresident

defendant is not necessary for personal jurisdiction in the forum state." *Cable/Home Communication Corp.*, 902 F. 2d at 858.

66.   Accordingly, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114, 107 (1987).

67.   In this case, as to the first prong, Blackburn, Zaroui, and Crawford's acts constitute communications into Florida and fall within Florida's long-arm statute. *See* Declaration of Denis Dreni.

68.   Personal jurisdiction is straightforward pursuant to *Marshall* as this case concerns Blackburn, Zaroui, and Crawford's telephonic communications and electronic communications in the form of Skype, Whatsapp, phone calls, video conferencing, emails, attachments, and text messages and those communications were directed to reach a specific recipient, Skypoint, a Florida limited liability company, in a specific forum Florida; "in other words, it is clear that the nonresident defendant's communications were made into Florida." *Marshall*, 39 So. 3d at 1208.

69.   As to the second prong, Blackburn, Zaroui, and Crawford knew Plaintiff was a Florida company located in Florida at the times the misrepresentations were made and as such they have purposefully availed themselves of the privilege of conducting activities within the Florida.

70. Moreover, this analysis requires courts to determine whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being hailed into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

71. The Agreement between Skypoint and 3 Amigos, Exhibit A to the TAC, contains a forum-selection clause directing Florida courts has having jurisdiction. (Doc. 93.1, ¶ 7). "As the Supreme Court noted in *Burger King*, the due process analysis is unnecessary where a nonresident defendant has consented to suit in a forum." *Alexander Proudfoot Co. World Headquarters LP v. Thayer*, 877 F. 2d 912, 921 (11th Cir. 1989).

72. While Blackburn, Zaroui, and Crawford are not parties to the Agreement, they are members of 3 Amigos, have knowledge of the Agreement, and their actions upon which Skypoint seeks relief stem from and are related to the Agreement. This is further support of their purposeful availment of conducting business in Florida and that they should reasonably anticipate being hailed into court in Florida.

73. Accordingly, pursuant to *Asahi*, having established Blackburn, Zaroui, and Crawford's minimum contacts with Florida, the interests of Skypoint and this Court in the exercise of jurisdiction will justify a serious burden, if any, placed on the alien Defendants.

74. As to the corporate shield doctrine, it is inapplicable as Fla. Stat. 517.211(2), Section 20(a) of the Securities Exchange Act of 1934, and general tort principles all provide for

individual liability. *See also Elandia Intern., Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1332 (S.D. Fla. 2010)("A corporate officer, however, is subject to jurisdiction in the forum if the corporate officer commits intentional tortious acts aimed at the forum state.").

75. Accordingly, this Court has personal jurisdiction over Blackburn, Zaroui, and Crawford.

### V. Sanctions Against Plaintiff are not Warranted

76. Defendants request that this Court impose sanctions pursuant to the PSLRA and Rule 11(b) of the Federal Rules of Civil Procedure.

77. The PSLRA provides:

> In any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion.

15 U.S.C. § 78u-4(c)(1).

78. Rule 11(b) imposes a duty upon attorneys to "refrain from filing or pursuing frivolous claims." *Mirabilis Ventures, Inc. v. Palaxar Grp., LLC*, 2010 WL 5582878, *9 (M.D. Fla. Dec. 15, 2010)(citation omitted). *See also* (Order, p. 14, fn. 4).

79. The PSLRA "does not alter the standards used to judge compliance with Rule 11" *Citibank Global Mkts., Inc. v. Santana*, 573 F.3d 17, 32 (1st Cir.2009).

80. In assessing the propriety of Rule 11 sanctions, this Court asks: "(1) whether the party's claims are objectively frivolous, and (2) whether the person who signed the

pleadings should have been aware that they were frivolous." *Byrne v. Nezhat*, 261 F.3d 1075, 1105 (11th Cir. 2001).

81.   Defendants describe Plaintiff's filings before this Court as frivolous and harassing, easy for the Plaintiff to file, and have done nothing more than drive up Defendants' litigation costs. Defendants' mischaracterization of Plaintiff's claim is without any merit.

82.   Plaintiff's 10(b) claim, as well as its state law claims, are supported by law and fact and have only suffered dismissal due to pleading deficiencies which were corrected by the filing of the TAC. In fact, prior to filing the TAC, counsel for Defendants offered to file an Answer to the First Amended Complaint, rather than engage "in any further motion practice with regard to the sufficiency of the complaint or the court's subject/personal jurisdiction and other preliminary issues". A true and accurate copy of the October 2, 2018 communication between counsel is attached herein as **Attachment B**.

83.   Defendants' attorney's own communication belies their assertion of Rule 11 sanctions. Clearly, Defendants acknowledged the non-frivolous nature of Plaintiff's claims and any possible deficiencies then were limited to the sufficiency of pleading. Any increase in the cost of litigation, to both Plaintiff and Defendants, are at least due to Defendants' decision to continue challenging the sufficiency of the pleading instead of answering as they previously indicated they would, handling the case on the merits.

84.   In bringing the instant action, the undersigned conferred with an attorney that primarily focuses on 10(b) litigation who opined that Plaintiff's substantive claims

warranted relief under 10(b). Further, the deficiencies addressed by this Court as to the SAC were a matter of pleading and were corrected by Plaintiff in the TAC.

85.   In addition, the undersigned researched 10(b) pleadings in both the Middle District and Southern District that survived attack by motion to dismiss as raised by Defendants in this case and mimicked all complaints to be in conformity with those pleadings wherein the courts denied dismissal.

86.   Plaintiff's previous failure to sufficiently plead as stated by this Court in its Order is a far cry from a position warranting Rule 11 sanctions. Plaintiff correct all deficiencies pointed out by this Court's Order in the TAC.

87.   Lastly, Plaintiff respectfully requests this Court impose sanctions against Defendants regarding the filing of the Declaration of Mark Christopher Crawford. (Doc. 97). Crawford's claim of domicile in Albania is clearly contradicted by his own previous statements and Defendants' eleventh-hour assertion of the same warrants the imposition of sanctions. Plaintiff was now required to engage in additional research, both factual and legal, to defend against this spurious claim being brought as a last ditch effort to try and prevent this case from being heard on the merits.

WHEREFORE, Skypoint respectfully requests this Honorable Court enter an Order denying Defendants' Motion to Dismiss the Third Amended Complaint and require Defendants to file an answer so the case can proceed on its merits.

Respectfully submitted by,

JOSEPH A. DAVIDOW
Attorney for Plaintiff
Florida Bar No. 65885
WILLIS & DAVIDOW, L.L.C.
9015 Strada Stell Court #106
Naples, Florida 34109
(239) 465-0531
jdavidow@willisdavidow.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been e-filed via CM/ECF which will e-mail a copy to: any pro se parties, or attorneys for parties, upon the filing of a Notice of Appearance, this 11th day of June, 2019.

JOSEPH A. DAVIDOW
Attorney for Plaintiff
Florida Bar No. 65885
WILLIS & DAVIDOW, L.L.C.
9015 Strada Stell Court #106
Naples, Florida 34109
(239) 465-0531
jdavidow@willisdavidow.com