UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SKYPOINT ADVISORS, LLC.,

        Plaintiff,

v.                                    Case No:  2:18-cv-356-FtM-29MRM

3 AMIGOS PRODUCTIONS LLC.,
BLACKBURNSTEELE LLC., ISSA
ZAROUI, and MARK C CRAWFORD,

        Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on review of the defendants' Motion to Dismiss (Doc. #96) filed on May 21, 2019. Plaintiff filed a Response (Doc. #102) on June 11, 2019, the defendants filed a Reply (Doc. #105) on June 26, 2019, and plaintiff filed a Sur Reply (Doc. #109) on July 11, 2019. For the reasons that follow, the motion is denied.

**I.**

**A. The Parties**

According to the Third Amended Complaint, plaintiff Skypoint Advisors, LLC is a Florida limited liability company by and through its members, which include Dennis Dreni. (Doc. #93, p. 1.) Defendant 3 Amigos Productions, LLC is a Nevada limited liability company with three managing members: (1) defendant BlackburnSteele, LLC, a Nevada limited liability company; (2)

defendant Issa Zaroui, a citizen of New York; and (3) non-party
Chad Pittman, a citizen of Virginia.  (Id. pp. 1-2.)  Finally,
defendant Mark Crawford is the sole managing member of defendant
BlackburnSteele.  (Id. p. 2.)

**B. Factual History**

According to the Third Amended Complaint, the defendants,
individually and acting in concert, began soliciting plaintiff's
member Dreni in November 2016 to invest in the production of a
proposed film entitled "Lazarat Burning."  (Id. pp. 4-5.)  From
November 2016 until January 2017, the defendants made
representations to Dreni regarding the film's production,
financing, and potential profits.  (Id. pp. 5-25.)  In early 2017,
plaintiff and defendant 3 Amigos entered into a "Film Financing
Agreement," with plaintiff agreeing to loan $50,000 as an
investment in the project.  (Id. p. 27; Doc. #93-1, p. 52.)  Per
the terms of the agreement, plaintiff elected to receive a
proportional share of the film's profits rather than interest on
the $50,000.  (Doc. #93-1, p. 53.)  The agreement contained a
distribution schedule and stated the distributions constituted
"securities" exempt from federal registration requirements.  (Id.
p. 54.)  Finally, the agreement contained a choice of law provision
construing the agreement under Florida law, and a forum-selection
clause listing "any court in the State of Florida" as having
jurisdiction over the matter.  (Id. p. 55.)

Sometime after entering into the agreement, plaintiff "developed significant concerns" related to the project and demanded a refund of its money. (Doc. #93, p. 31.) The defendants refused to return plaintiff's investment and plaintiff initiated this action in May 2018. (Id. p. 32; Doc. #1.)

## C. Procedural History

In January 2019, plaintiff filed its Second Amended Complaint alleging a claim under Section 10(b) of the Securities Exchange Act of 1934, as well as various Florida and common law claims. (Doc. #52, pp. 12-26.) The defendants filed a motion to dismiss the complaint (Doc. #56), which the Court granted in part and denied in part. (Doc. #92.) The Court found the Section 10(b) claim failed to meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and the Court lacked subject matter jurisdiction for the remaining claims. (Doc. #92, pp. 14-15.) As this was the third version of the complaint filed, the Court granted plaintiff one final opportunity to amend and cure the pleading and jurisdictional deficiencies. (Id. pp. 10, 14, 15.)

On April 30, 2019, plaintiff filed its Third Amended Complaint alleging the following six claims: (1) violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder; (2) violation of Florida's Securities and Investor

Protection Act, § 517.011 et. seq., Fla. Stat.; (3) common law fraud; (4) violation of Florida's Deceptive and Unfair Trade Practices Act, § 501.201 et. seq., Fla. Stat.; (5) breach of contract; and (6) breach of fiduciary duty. (Doc. #93, pp. 32-47.) The first four claims are alleged against all the defendants, while the fifth and sixth claims are alleged only against defendant 3 Amigos. (Id.) Plaintiff claims damages of over $90,000. (Id. p. 27.)

On May 21, 2019, the defendants filed the Motion to Dismiss now before the Court. (Doc. #96.) The motion seeks dismissal on the following grounds: (1) failure to satisfy pleading requirements as to Counts One, Two and Three; (2) failure to state a claim upon which relief can be granted as to Counts One, Two and Three; (3) lack of subject matter jurisdiction as to Counts Two through Six; and (4) lack of personal jurisdiction over defendants BlackburnSteele, Crawford, and Zaroui. (Id. pp. 9-10.) The motion also seeks to have sanctions imposed on plaintiff for the filing of a frivolous claim. (Id. pp. 22-24.)

**II.**

**A. Failure to Satisfy Pleading Requirements**

**1. Count One**

**a. Rule 9(b) Argument**

Section 10(b) of the Securities Exchange Act makes it unlawful for any person to "use or employ, in connection with the purchase

or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). SEC Rule 10b–5 implements this provision by making it unlawful to, *inter alia*, "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5(b). The Supreme Court has "implied a private cause of action from the text and purpose of § 10(b)." <u>Matrixx Initiatives, Inc. v. Siracusano</u>, 563 U.S. 27, 37 (2011) (citation omitted).

To state a claim for securities fraud under Section 10(b) and Rule 10b-5, a plaintiff must adequately allege: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. <u>Meyer v. Greene</u>, 710 F.3d 1189, 1194 (11th Cir. 2013) (citing <u>Dura Pharms., Inc. v. Broudo</u>, 544 U.S. 336, 341–42 (2005)). Furthermore, to survive a motion to dismiss, a claim brought under Rule 10b-5(b) must satisfy: (1) the federal notice pleading requirements in Federal Rule of Civil Procedure 8(a)(2); (2) the special fraud pleading requirements in Federal Rule of Civil Procedure 9(b); and (3) the additional pleading requirements in

the PSLRA.  *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843

F.3d 1257, 1269 (11th Cir. 2016).

Under Rule 8(a)(2), a complaint must contain "a short and

plain statement of the claim showing that the pleader is entitled

to relief." Fed. R. Civ. P. 8(a)(2).  The complaint must allege

"enough facts to state a claim to relief that is plausible on its

face," and the factual allegations "must be enough to raise a right

to relief above the speculative level." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555, 570 (2007).

In addition to the Rule 8(a)(2) requirements, Rule 9(b)

requires that parties alleging fraud or mistake "must state with

particularity the circumstances constituting fraud or mistake."

Fed. R. Civ. P. 9(b).

> While Rule 9(b) does not abrogate the concept of notice
> pleading, it plainly requires a complaint to set forth:
> (1) precisely what statements or omissions were made in
> which documents or oral representations; (2) the time
> and place of each such statement and the person
> responsible for making (or, in the case of omissions,
> not making) them; (3) the content of such statements and
> the manner in which they misled the plaintiff, and; (4)
> what the defendant obtained as a consequence of the
> fraud.

*In re Galectin*, 843 F.3d at 1269 (citations omitted); *see also*

*Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006)

("A sufficient level of factual support for a [Section 10(b)] claim

may be found where the circumstances of the fraud are pled in

detail. 'This means the who, what, when[,] where, and how: the

first paragraph of any newspaper story.'" (citation omitted)). The "[f]ailure to satisfy Rule 9(b) is a ground for dismissal of a complaint." In re Galectin, 843 F.3d at 1269 (quoting Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005)).

Finally, the PSLRA also imposes heightened pleading requirements for Rule 10b-5(b) actions. Id. For such claims predicated on allegedly false or misleading statements or omissions, the PSLRA provides that

> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1).

Count One of the Third Amended Complaint accuses the defendants of making fraudulent statements to induce plaintiff to invest in the film project. (Doc. #93, pp. 32-36.) The Third Amended Complaint lists the following as examples of the misrepresentations made by the defendants:

> (a) that the Project was almost contractually fully funded due to almost two years' worth of work by Defendants[;]
> . . .
> (b) that Skypoint's then proposed $50,000.00 investment was the final investment needed to complete the budget for the Project, describing Skypoint's then proposed $50,000.00 investment as contingent in that the expenditure thereof may not be necessary for the completion of the Project, and that Skypoint was the final investor accepted for the Project[;]
> . . .

(c) mischaracterized Skypoint's then proposed $50,000.00 investment as de minimus in light of the investment funds already collected for the Project and presented 3 Amigos's proposed acceptance of Skypoint's $50,000.00 investment as doing a favor for Skypoint[;]

. . .

(d) that all of the production work for the Project was already paid[;]

. . .

(e) that Crawford, Zaroui, and Pittman already personally invested at least $30,000.00 each to the Project[;]

. . .

(f) that DigitAlb, a prominent Albanian media company, already invested approximately $400,000.00 into the Project[;]

. . .

(g) that 3 Amigos had existing contracts with distribution companies Karo Films, the largest Russian firm of its kind in the Russian region, and Fantastic Film International regarding distribution of the Project resulting in revenue of $24,000.000.00[;]

. . .

(h) that Gabriel Garko, a preeminent Italian actor, [wa]s playing a major role in the Project and therefore pre-sale forecasts ha[d] been met resulting in additional revenue of two to three million dollars in the Italian market alone[;]

. . .

(i) that all third-party consultants had been previously paid prior to Skypoint's decision to invest[;]

. . .

(j) that Crawford was Chief Financial Officer of 3 Amigos and that he had sole control and access over 3 Amigos' financial accounts[.]

(Id. pp. 5-24.) The Third Amended Complaint states that these statements were false, each defendant had knowledge of their falsity, and the defendants made the statements in an attempt to mislead investors into investing in the project. (Id. pp. 25-26.)

The defendants argue plaintiff's Section 10(b) claim fails to meet the requirements of Rule 9(b) because the Third Amended

Complaint offers no specifics "as to who in particular made *any* particular representation, or when, or in what manner, or how they were misleading." (Doc. #96, p. 12.)  The Court disagrees.  As noted above, the Third Amended Complaint contains a list of ten examples of allegedly fraudulent statements.  Following each example, the Third Amended Complaint describes which of the defendants made the alleged misrepresentation, the instrument by which the defendant(s) made the alleged misrepresentation, and the reason(s) why the alleged misrepresentation was misleading. (Doc. #93, pp. 5-25.)

The defendants also suggest plaintiff's claim fails because any claim attributable to defendant 3 Amigos could have been made by non-party Pittman, in which case the other defendants would not be liable.  (Doc. #96, p. 12.)  However, when the Third Amended Complaint attributes a representation to defendant 3 Amigos, it does so "by and through" one of the other named defendants. (Doc. #93, pp. 7, 9, 12, 13, 15, 17, 20, 22, 23, 25.)  Accordingly, as the misrepresentations alleged in the Third Amended Complaint are attributed to one or more of the defendants, the defendants' argument regarding non-party Pittman fails.[1]

---

[1] The defendants also note that the Third Amended Complaint "repeatedly casts each Defendant as having made identical serial misrepresentations."  (Doc. #96, p. 12.)  To the extent the defendants are arguing for dismissal based on the validity of plaintiff's allegations, the Court rejects such an argument. See Hunnings v. Texaco, Inc., 29 F.3d 1480, 1484 (11th Cir. 1994) ("In

The defendants also suggest the Section 10(b) claim fails because the Third Amended Complaint references specific dates for only a few of the alleged misrepresentations, while the majority are simply alleged to have occurred "[f]rom November 2016 to January 2017." (Doc. #96, pp. 12-13; Doc. #93, p. 5.) However, the Court finds such an allegation is sufficient to satisfy the "when" requirement of Rule 9(b). In MeterLogic, Inc. v. Copier Solutions, Inc., the amended complaint contained allegations of fraud described to have taken place "from December 31, 1998 to June 29, 1999." 126 F. Supp. 2d 1346, 1361 (S.D. Fla. 2000). In finding the allegations provided sufficient information to satisfy Rule 9(b), the Southern District noted:

> MeterLogic has given the defendants the "who, what, where, and when" of the alleged fraud that took place. While MeterLogic need not provide the exact time and place of all the meetings, it does provide this information for some of the statements. In any event, it supplies a sufficiently narrow time frame from which CS and TS could be on notice as to when these statements were made.

Id. Similarly, the Court finds the Third Amended Complaint's allegation that the alleged misrepresentations occurred between November 2016 and January 2017 is sufficiently narrow to satisfy Rule 9(b).

---

ruling on a motion to dismiss for failure to state a claim, the district court must accept the allegations of the complaint as true and must construe the facts alleged in the light most favorable to the plaintiff.").

**b. Elements Argument**

The defendants next argue that the Section 10(b) claim should be dismissed for failing to allege various necessary elements. (Doc. #96, pp. 13-17.)  As noted above, a Section 10(b) claim must adequately allege (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.  Meyer, 710 F.3d at 1194 (quoting Dura, 544 U.S. at 341-42).  The defendants argue the Third Amended Complaint's Section 10(b) claim fails to sufficiently plead scienter, loss causation, and reasonable reliance.  (Doc. #96, pp. 13-17.)  The Court will address each of these arguments in turn.

In pleading scienter, a Section 10(b) claim must meet the PSLRA's requirement to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2)(A); Thompson v. RelationServe Media, Inc., 610 F.3d 628, 633 (11th Cir. 2010).  In this context, a "strong inference" of scienter is one that is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Thompson, 610 F.3d at 633 (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314 (2007)).  When reviewing a complaint's scienter allegations, the court must (1) "accept all factual allegations in the complaint as true," (2) "consider the

complaint in its entirety" and determine "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter," and (3) "take into account plausible opposing inferences." Id. at 633-34 (quoting Tellabs, 551 U.S. at 322-23). Moreover, "scienter must be found with respect to each defendant and with respect to each alleged violation of the statute." Id. (quoting Phillips v. Scientific-Atlanta, Inc., 374 F.3d 1015, 1017-18 (11th Cir. 2004)).

While the PSLRA imposes a heightened standard for pleading scienter, it does not alter the substantive intent requirements necessary to establish a Section 10(b) and Rule 10b-5 violation. Thompson, 610 F.3d at 634. In the Eleventh Circuit, Section 10(b) and Rule 10b-5 require a showing of either an "intent to deceive, manipulate, or defraud," or "severe recklessness." Id. (quoting Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1238 (11th Cir. 2008)). Accordingly, to survive a motion to dismiss, a Section 10(b) claim must "plead 'with particularity facts giving rise to a strong inference' that the defendants either intended to defraud investors or were severely reckless when they made the allegedly materially false or incomplete statements." Id. (quoting Mizzaro, 544 F.3d at 1238).

The defendants argue the Third Amended Complaint fails to sufficiently plead scienter by pleading only "generalized misstatements spread over a three-month period, utterly failing to

identify *any* factual basis regarding the state of mind of *any* maker of *any* statement at *any* time, let alone regarding every misstatement alleged." (Doc. #96, p. 14.) Having considered the complaint in its entirety, accepting all factual allegations as true, and taking into account plausible opposing inferences, the Court finds the Third Amended Complaint alleges sufficient facts which, taken collectively, give rise to a strong inference of scienter.

As previously noted, the Third Amended Complaint provides ten examples of alleged misrepresentations made by the defendants to plaintiff and describes why each was misleading. (Doc. #93, pp. 5-24.) In describing each of these misrepresentations, the Third Amended Complaint states the defendants "acted with knowledge, or at least severe recklessness, as to the materially false and misleading nature of the foregoing statement and knew that such statement presented a danger of misleading" plaintiff. (Id. pp. 6-25.) The Third Amended Complaint also alleges that the defendants solicited investors, including plaintiff, knowing that their statements were false and that "their claims of financial reward and estimated return on investments were not feasible." (Id. p. 26.) Finally, the Third Amended Complaint states the "misrepresentations and/or omissions were done knowingly or with a deliberate recklessness and for the purpose and effect of concealing information regarding the Project's true status as a

façade and vehicle for fraud and theft." (Id. p. 35.) The Court finds these allegations sufficient to plead the scienter element. See Anderson v. Transglobe Energy Corp., 35 F. Supp. 2d 1363, 1368-69 (M.D. Fla. Feb. 8, 1999) (allegations that defendant was reckless in overstating the potential and status of a business venture were sufficient to allege scienter); Page v. Derrickson, 1997 WL 148558, *5 (M.D. Fla. Mar. 25, 1997) ("Plaintiff alleges that all Defendants 'acted with knowledge or reckless disregard of the misleading nature of his statements and omissions,' and . . . that its injuries resulted from its purchase of stock 'at prices that were artificially inflated by Defendants' misleading statements . . . .' These allegations are sufficient to meet the scienter pleading requirement.").

Turning to loss causation, that element "requires that the defendant's fraud be both the but-for and proximate cause of the plaintiff's later losses." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1309 (11th Cir. 2011) (citation omitted). Stated differently, "loss causation describes 'the link between the defendant's misconduct and the plaintiff's economic loss.'" Robbins v. Kroger Properties, Inc., 116 F.3d 1441, 1447 (11th Cir. 1997) (quoting Rousseff v. E.F. Hutton Co., Inc., 843 F.2d 1326, 1329 n.2 (11th Cir. 1988)). The defendants argue the Section 10(b) claim fails to sufficiently plead loss causation due to (1) lack of specificity regarding the alleged misrepresentations and who

made them, and (2) factual allegations in the Third Amended Complaint that take place after the agreement was signed. (Doc. #96, pp. 14-15.)

Having reviewed the Third Amended Complaint, the Court disagrees with the defendants' argument. Importantly, loss causation is not subject to the PSLRA's heightened pleading requirement and must only be pled in accordance with Federal Rule of Civil Procedure 8(a)(2). In re Taco Energy, Inc. Sec. Litig., 2006 WL 2884960, *5 (M.D. Fla. Oct. 10, 2006). Furthermore, to plead loss causation sufficiently, a plaintiff "can allege that they would not have invested had they known the truth, and that the untruth was in some reasonable direct way responsible for the loss." Anderson, 35 F. Supp. 2d at 1369; Page, 1997 WL 148558, *6. The Third Amended Complaint alleges that had plaintiff "known of Defendants' fraudulent practices, [plaintiff] would not have invested or otherwise acquired an interest" in the film, and that as a direct and proximate result of the defendants' conduct, plaintiff suffered damages from the investment. (Doc. #93, pp. 35-36.) The Court finds these allegations sufficient to survive dismissal at the pleading stage. See In re PSS World Med., Inc. Sec. Litig., 250 F. Supp. 2d 1335, 1351 (M.D. Fla. Aug. 1, 2002) (finding complaint adequately pled loss causation where "the Plaintiffs have averred that the Defendants' misrepresentations or omissions caused the Plaintiffs' to purchase the inflated stock,

and that the Defendants' fraud in committing GAAP violations and improprieties was part of a course of conduct that was ultimately the proximate cause of the Plaintiffs' loss").

Finally, a showing of plaintiff's reasonable or justifiable reliance on the misrepresented or omitted information is necessary to plead a federal securities fraud cause of action.[2] <u>Beckel v. Fagron Holding USA, LLC</u>, 2017 WL 3730395, *6 (M.D. Fla. June 30, 2017). To demonstrate justifiable reliance, plaintiff must show that it reasonably relied on the misrepresentations or omissions of the defendants and that it "still could not have discovered the truth behind the fraudulent omission or misrepresentation" even "with the exercise of reasonable diligence." <u>Id.</u> (quoting <u>Gochnauer v. A.G. Edwards & Sons, Inc.</u>, 810 F.2d 1042, 1047 (11th Cir. 1987)). The defendants argue plaintiff cannot plead reasonable reliance, specifically regarding the alleged misrepresentations related to revenue. (Doc. #96, pp. 15-16.) As noted above, the Third Amended Complaint alleges the defendants made misrepresentations regarding $24 million in revenue from distribution contracts and $2-3 million in revenue from pre-sales in the Italian market. (Doc. #93, pp. 18, 20.) The defendants argue that, to the extent plaintiff claims these statements were

---

[2] The Eleventh Circuit has used the terms "justifiably relied" and "reasonably relied" interchangeably to describe this element. <u>See</u> <u>Ledford v. Peeples</u>, 657 F.3d 1222, 1248 n.80 (11th Cir. 2011).

misrepresentations, it could not reasonably rely upon them because (1) plaintiff is a sophisticated investor and (2) such revenues differ from those outlined in the agreement. (Doc. #96, pp. 16-17); see also Bruschi v. Brown, 876 F.2d 1526, 1529 (11th Cir. 1989) (listing factors to consider in determining whether an investor's reliance was justified, including "the sophistication and expertise of the plaintiff in financial and security matters"); Garcia v. Santa Maria Resort, Inc., 528 F. Supp. 2d 1283, 1295 (S.D. Fla. 2007) (dismissing securities fraud claim for lack of reasonable reliance, noting reliance on fraudulent representations "is unreasonable *as a matter of law* where the alleged misrepresentations contradict the express terms of the ensuring written agreement" (citation omitted)).

Plaintiff responds by arguing it sufficiently alleged reliance in the Third Amended Complaint and, regardless, the issue of reasonable reliance should not be decided on a motion to dismiss. (Doc. #102, pp. 9-10.) Having considered the arguments and reviewed the Third Amended Complaint, the Court finds plaintiff has adequately alleged reasonable reliance. The Third Amended Complaint notes several times that plaintiff relied on the defendants' misrepresentations when entering into the agreement. (Doc. #93, pp. 5, 26.) While the defendants challenge whether plaintiff could have reasonably relied on the alleged misrepresentations related to revenues, plaintiff has also alleged

eight additional misrepresentations it relied upon when entering into the agreement. (Doc. #93, pp. 5-24.) Because the defendants have not argued plaintiff did not reasonably rely upon these other misrepresentations, and because the Third Amended Complaint adequately pleads such reliance, dismissal is inappropriate.

### 2. Counts Two and Three

Count Two of the Third Amended Complaint alleges a violation of Florida's Securities and Investor Protection Act and Count Three alleges a claim of common law fraud. (Doc. #93, pp. 36-41.) The defendants argue that both claims should be dismissed for the same reasons Count One should be dismissed. (Doc. #96, pp. 20-21); see also Grippo v. Perazzo, 357 F.3d 1218, 1222 (11th Cir. 2004) (noting that the elements of a cause of action under section 517.301 of Florida's Securities and Investor Protection Act were "identical to those under the Federal Rule 10b-5, except that the scienter requirement under Florida law is satisfied by showing of mere negligence"). As the Court has considered and rejected those arguments already, they need not be addressed again.

### B. Lack of Subject Matter Jurisdiction

The defendants next argue the Court should dismiss Counts Two through Six for lack of subject matter jurisdiction. (Doc. #96, pp. 17-20.) In raising these claims in the Third Amended Complaint, plaintiff asserts this Court has both supplemental jurisdiction pursuant to 28 U.S.C. § 1367, and diversity

jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. #93, pp. 36, 39, 41, 43, 45.) In the Motion to Dismiss, the defendants challenge both asserted jurisdictional grounds. (Doc. #96, pp. 17-18.) Having reviewed the allegations in the Third Amended Complaint, the Court finds it has supplemental jurisdiction over Counts Two through Six pursuant to 28 U.S.C. § 1367.

Section 1367 provides that subject to inapplicable exceptions, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Here, the Court has original jurisdiction over plaintiff's Section 10(b) claim, and the remaining claims are "so related" to that claim to fall within the Court's supplemental jurisdiction. The defendants' sole argument against supplemental jurisdiction is based upon an assertion that Count One should be dismissed. (Doc. #96, p. 17.) However, because the Third Amended Complaint adequately pleads a Section 10(b) claim under Count One, the Court has jurisdiction over the related claims alleged in Counts Two through Six.[3]

---

[3] The Court's determination regarding supplemental jurisdiction moots the dispute between the parties regarding diversity jurisdiction. However, the Court writes separately to address the defendants' argument regarding sanctions. The Motion

**C. Lack of Personal Jurisdiction**

The motion next argues that defendants Zaroui, BlackburnSteele, and Crawford should be dismissed from this action for lack of personal jurisdiction. (Doc. #96, pp. 21-22.) A court is obligated to dismiss an action against a defendant over which it lacks personal jurisdiction. <u>Smith v. Trans-Siberian Orchestra</u>, 689 F. Supp. 2d 1310, 1312 (M.D. Fla. 2010). On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing, by a preponderance of the evidence, that the court has jurisdiction over the defendant. <u>Id.</u> The plaintiff is required to allege in the complaint sufficient facts to make out a prima facie case of jurisdiction. <u>Louis Vuitton Malletier, S.A. v. Mosseri</u>, 736 F.3d 1339, 1350 (11th Cir.

---

to Dismiss asserts that defendant Crawford is domiciled in Albania, and therefore there is no complete diversity of citizenship. (Doc. #96, p. 18.) Defendant Crawford has provided an affidavit attesting to his Albanian domicile. (Doc. #96-1, p. 27.) Plaintiff argues such an assertion is "self-serving" and a "willful fabrication," and accuses defendant Crawford of attempting "to manufacture documentary support for his position after this action was filed strictly to fight jurisdiction." (Doc. #102, pp. 10, 12, 15.) In reply, the defendants request the Court to order plaintiff "to present all evidence in support of such charges," and if plaintiff is unable to substantiate the accusations, to impose "appropriate discipline." (Doc. #105, p. 8 n.4.) Alternatively, plaintiff requests the Court grant defendants the opportunity to demonstrate plaintiff's non-compliance with Rule 11 of the Federal Rules of Civil Procedure and explain why sanctions are appropriate. (<u>Id.</u>) The Court will grant the alternative request and the defendants may file a motion pursuant to Rule 11 if they choose.

2013) (citation omitted).  When a defendant challenges personal jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.  Id. (citation omitted).  The determination of whether the court has personal jurisdiction over a defendant is governed by a two-part analysis:

> First, the court must determine whether the plaintiff has alleged facts sufficient to subject the defendant to Florida's long-arm statute.  Second, once it has determined that the long-arm statute is satisfied, the court must determine whether plaintiff's assertion of jurisdiction comports with the Constitution's requirements of due process and traditional notions of fair play and substantial justice.

Smith, 689 F. Supp. 2d at 1312 (citations omitted).

Turning to the first part of the analysis, the Third Amended Complaint asserts the Court has personal jurisdiction over the defendants "because they participated, individually and acting in concert, in tortious acts directed towards Florida, do sufficient business in Florida, have sufficient minimum contacts with Florida, and/or otherwise intentionally availed themselves of the Florida consumer market through the promotion of their services." (Doc. #93, p. 3.)  Florida's long-arm statute contains a list of numerous ways in which a person can subject themselves to jurisdiction of the state, including by "[c]omitting a tortious act within this state." § 48.193(1)(a)2., Fla. Stat.  The Florida Supreme Court has held that "committing a tortious act" within

Florida "can occur by making telephonic, electronic, or written communications into this State, provided that the tort alleged arises from such communications." Wendt v. Horowitz, 822 So. 2d 1252, 1253 (Fla. 2002) (footnote omitted); see also Internet Sols. Corp. v. Marshall, 557 F.3d 1293, 1296 (11th Cir. 2009) ("For the purposes of the [long-arm] statute, the defendant does not have to be physically present in Florida for the tortious act to occur within that state.").

Here, the Third Amended Complaint alleges the defendants committed tortious acts by making misrepresentations via various electronic communications into Florida for the purpose of inducing plaintiff into investing into the film project. (Doc. #93, pp. 4-5.) The motion does not dispute this as jurisdictional grounds under Florida's long-arm statute, but rather argues defendants Zaroui, BlackburnSteele, and Crawford are protected by Florida's "corporate shield" doctrine. (Doc. #96, p. 22.) In Florida, the corporate shield doctrine, also known as the "fiduciary shield" doctrine, provides that "acts performed by a person exclusively in his corporate capacity not in Florida but *in a foreign state* may not form the predicate for the exercise of personal jurisdiction over the employee in the forum state." Kitroser v. Hurt, 85 So. 3d 1084, 1088 (Fla. 2012). The rationale behind the doctrine is that it "may be unfair to force an individual to defend an action filed against him personally in a forum with which his only

relevant contacts are acts performed totally outside the forum state and not for his own benefit but for the exclusive benefit of his employer." Id. However, the defendants' argument is misplaced, as the doctrine does not apply to intentional torts. See Mosseri, 736 F.3d at 1355 ("[U]nder Florida law, this corporate shield doctrine is inapplicable where the corporate officer commits intentional torts."); Black v. Bryant, 905 F. Supp. 1046, 1052 (M.D. Fla. 1995) (noting that in accordance with Florida's long-arm statute, "a non-resident corporate officer may be haled into court in Florida if it is alleged that he personally committed an intentional tort expressly aimed at the plaintiff in the forum state."). As the Third Amended Complaint alleges all the defendants engaged in intentional torts, Florida's corporate shield doctrine does not apply.

Turning to the second element of the personal jurisdictional analysis, the motion argues defendants BlackburnSteele, Zaroui, and Crawford do not have "sufficient minimum contacts" with Florida to establish personal jurisdiction over them. (Doc. #96, p. 22.) In support, each of these defendants has submitted an affidavit attesting to their lack of contacts with Florida. (Doc. #57; Doc. #58; Doc. #59.) However, while each defendant denies having sufficient contacts with the state, none dispute having made communications to plaintiff via electronic means. In fact, two of

the defendants acknowledge having made such communications.[4]  (Doc. #57, pp. 1-3; Doc. #59, pp. 1-2.)  Accordingly, the issue is whether those communications are sufficient to satisfy the minimum contacts requirement for personal jurisdiction.  Having reviewed the Third Amended Complaint and the defendants' affidavits, the Court finds they do.

The Third Amended Complaint alleges all the defendants made "a number of misrepresentations" to plaintiff via electronic means between November 2016 and January 2017, and that plaintiff "reasonably relied on the numerous aforementioned misrepresentations."  (Doc. #93, pp. 4, 26.)  The Third Amended Complaint also asserts that the defendants "intentionally availed themselves of the Florida consumer market through the promotion of their services."  (Id. p. 3.)  Based upon these allegations, the Court finds defendants BlackburnSteele, Zaroui, and Crawford have sufficient contacts with Florida so that the extension of

_____

[4] Defendant BlackburnSteele's affidavit is provided by its managing member, defendant Crawford.  (Doc. #58.)  While the affidavit does not acknowledge defendant BlackburnSteele made communications to plaintiff, it does not dispute it either.  See Thomas v. Brown, 504 Fed. App'x 845, 847 (11th Cir. 2013) (noting that in personal jurisdiction analysis, if the plaintiff's complaint and the defendant's evidence conflict, "the district court must construe all reasonable inferences in favor of the plaintiff").  Furthermore, the affidavit notes that to the extent any of the complaint's factual allegations relate to defendant BlackburnSteele, "even assuming those allegations true for arguments sake, they were done in Blackburn's capacity as an agent of 3 Amigos."  (Id. p. 2.)

jurisdiction comports with the due process requirements of the Fourteenth Amendment. <u>See</u> <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476 (1985) ("So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."); <u>Rail Trs. Locomotive Leasing, LLC v. SunCoke Energy, Inc.</u>, 2016 WL 8902367, *8 (M.D. Fla. Aug. 16, 2016) (finding email and phone call communications "sufficient to be viewed as substantial and not isolated under a minimum contacts analysis").

## D. Sanctions

Finally, the defendants request the Court impose sanctions pursuant to section 78u-4(c) of the PSLRA. (Doc. #96, pp. 22-24.) That provision requires the Court to make "record specific findings" regarding compliance by each party and each attorney with the requirements of Rule 11(b) of the Federal Rules of Civil Procedure.[5] 15 U.S.C. § 78u-4(c)(1). However, the provision only applies "upon final adjudication of the action," <u>id.</u>, and therefore does not apply at this time.

Accordingly, it is now

---

[5] Rule 11(b) imposes a duty upon attorneys to "refrain from filing or pursuing frivolous claims." <u>Mirabilis Ventures, Inc. v. Palaxar Grp., LLC</u>, 2010 WL 5582878, *9 (M.D. Fla. Dec. 15, 2010) (citation omitted).

**ORDERED:**

1. The defendants' Motion to Dismiss (Doc. #96) is **DENIED**.

2. The defendants' request for sanctions pursuant to section 78u-4(c) is **DENIED as moot.**

**DONE AND ORDERED** at Fort Myers, Florida, this __25th__ day of July, 2019.

_____

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record