UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SKYPOINT ADVISORS, LLC.,

      Plaintiff/Counter
      Defendant,

v.                        Case No:  2:18-cv-356-FtM-29MRM

3 AMIGOS PRODUCTIONS LLC.,
BLACKBURNSTEELE LLC., ISSA
ZAROUI, and MARK C CRAWFORD,

      Defendants/
      Counterclaimants.

_____

3 AMIGOS PRODUCTIONS LLC.,
BLACKBURNSTEELE LLC., ISSA
ZAROUI, and MARK C CRAWFORD,

      Third-Party
      Plaintiffs,

v.

DENIS DRENI,

      Third-Party
      Defendant.

_____

**ORDER AND OPINION**

This matter comes before the Court on plaintiff's Dispositive Motion to Dismiss and Motion to Strike Counterclaims (Doc. #160) filed on February 18, 2020.  The defendants filed an Opposition (Doc. #162) on March 3, 2020.  With the permission of the Court (Doc. #166), plaintiff filed a Reply (Doc. # 170) on March 23, 2020.  For the reasons set forth below, the motion is denied.

**I.**

Plaintiff Skypoint Advisors, LLC (Skypoint) is a Florida limited liability company whose members include third-party defendant Denis Dreni (Dreni). (Doc. #93, p. 1.) Skypoint's Third Amended Complaint (Doc. #93) against 3 Amigos Productions, LLC, BlackburnSteele, LLC, Issa Zaroui, and Mark Crawford, alleges the defendants made misrepresentations to induce Skypoint to invest in a film project. (Id. pp. 2, 4-26.) The Third Amended Complaint asserts six claims, including a claim that defendants violated Section 10(b) of the Securities Exchange Act. (Id. pp. 32-47.)

In August 2019, the four defendants filed their Counterclaims against Skypoint and Dreni. The Counterclaims asserted claims of (1) defamation, (2) violation of the Stored Communications Act ("SCA"), 18 U.S.C. § 2707, and (3) tortious interference with a contract against Skypoint and Dreni jointly and severally. (Doc. #122, pp. 26-29.) Each claim was alleged on behalf of all four defendants. (Id. p. 14.)

In October 2019, Skypoint filed a motion seeking to dismiss the three counterclaims for failure to state a claim and/or lack of subject matter jurisdiction. (Doc. #136.) The motion was granted in part and denied in part, with Count Two of the counterclaims dismissed without prejudice as to defendants 3 Amigos, Crawford, and BlackburnSteele, and Count Three of the

Counterclaims dismissed without prejudice as to defendants Zaroui, Crawford, and BlackburnSteele.  (Doc. #151.)

On January 21, 2020, the defendants filed their First Amended Answer, Affirmative Defenses and Counterclaim, asserting the same three counterclaims: (1) defamation, (2) violation of the SCA, and (3) tortious interference with a contract against Skypoint and Dreni jointly and severally.  (Doc. #152, pp. 32-35.)  The defamation claim was asserted on behalf of all of the defendants, while the SCA claim was asserted on behalf of defendants Zaroui and 3 Amigos and the tortious interference claim was asserted on behalf of only defendant 3 Amigos.  (Id.)

**II.**

On February 18, 2020, Skypoint filed the motion currently before the Court, arguing the three counterclaims should each be dismissed for failure to state a cause of action.  (Doc. #160, p. 3.)  The motion also seeks to strike ten paragraphs and two footnotes contained in the counterclaims.  (Id. pp. 8-9.)  The Court will address these issues in turn.

**A. Legal Standards**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555; see also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible. Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, a party may move to strike "any redundant, immaterial, impertinent, or scandalous matter" within the pleadings. The court enjoys broad discretion in determining whether to grant or deny these motions to strike. Anchor Hocking Corp. v. Jacksonville Elec. Auth., 419 F. Supp. 992, 1000 (M.D. Fla. 1976). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." Hutchings v. Fed. Ins. Co., 2008 WL 4186994, *2 (M.D. Fla. Sept. 8, 2008) (marks and citation omitted). It is not intended to "procure the dismissal of all or part of a complaint." Id. Likewise, a motion to strike is a drastic remedy and is disfavored by the courts. Schmidt v. Life Ins. Co. of N. Am., 289 F.R.D. 357, 358 (M.D. Fla. 2012). Therefore, a motion to strike should be granted only if "the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." Id.

## B. Counterclaims

The Court will first summarize the three counterclaims. Count One alleges Skypoint and Dreni sent text messages to various non-parties containing false and defamatory content. (Doc. #152, p. 32.) Specifically, the defendants allege the following:

> 67. On February 20, 2018, Dreni described Zaroui as a "con artist" and forwarded the message to non-parties.

68. On March 1, 2018, Skypoint and Dreni sent text messages to Koloreto Cukalli in which they made false and defamatory statements regarding the Counterclaim Plaintiffs, describing them as deceitful and as being engaged in fraudulent and illegal behavior.

69. On May 15, 2018Skypoint [sic] and Dreni sent text messages to Koloreto Cukalli in which they made false and defamatory statements regarding the Counterclaim Plaintiffs.

70. Skypoint and Dreni sent similar text messages to another third party, Musha Pnishi, towards the end of 2018.

71. Upon information and belief, Skypoint and Dreni sent additional messages to additional non-parties containing similar false and defamatory content, describing the Counterclaim Plaintiffs as deceitful and as being engaged in fraudulent and illegal behavior, all to be proven during the course of this proceeding.

(Id.)

Count Two alleges a violation of the SCA due to access of Zaroui's email without authorization. (Id. p. 34.) Specifically, the defendants allege the following:

81. Upon information and belief, Dreni, or someone acting on his behalf, accessed Zaroui's e-mail, which is not open to the public, in order to view its contents and copy materials contained in the e-mail account. These materials include a copy of Zaroui's U.S. passport as well as business-related information such as names and contact information of business contacts. Such access was not authorized by Zaroui or 3 Amigos and was pursued by Dreni clandestinely.

82. Dreni/Skypoint's actions constitute the access "without authorization a facility through which an electronic communication service is provided." 18 U.S.C. §2701(a).

83. Dreni and Skypoint's access to Zaroui/3 Amigos' e-mail account was done willfully and intentionally to

> harm the Counterclaim Plaintiffs and "The Brave."
> Skypoint/Dreni accessed Zaroui's e-mail for the purpose
> of harming him, 3 Amigos and Crawford, and to use the
> information found against them.

(Id.)

Finally, Count Three alleges Skypoint and Dreni engaged in

tortious interference with a contract between 3 Amigos and non-

party Mental Media, asserting the following:

> 86. A valid contract existed between 3 Amigos and Mental
> Media, pursuant to which Mental Media undertook to
> complete the film no later than February 28, 2018.
>
> 87. Skypoint and Dreni knew of the contract between 3
> Amigos and Mental Media. Skypoint and Dreni also knew
> that the contract provided for a deadline to complete
> the film by February 28, 2018.
>
> 88. Skypoint and Dreni intentionally interfered with the
> contract between 3 Amigos and Mental Media by causing
> Kaufman – the main contact between Mental Media and 3
> Amigos – to divert his time to the production of a
> different film. Skypoint and Dreni interfered by
> intentionally misrepresenting to Kaufman that Dreni
> ha[d] secured sufficient funding for "Sinners and
> Saints: Vengeance," when, in fact, there was no[t]
> sufficient funding. As a result, Mental Media failed to
> deliver the final version of the film by the February
> 28, 2018 contractual deadline and was in breach of the
> contract.
>
> 89. As a result of Skypoint and Dreni's intentional
> interference, 3 Amigos incurred significant expenses in
> connection with, *inter alia*, rescheduling the release of
> the Film and investor relations.

(Id. p. 35.)

### C. Analysis

In arguing for dismissal, Skypoint argues that all three

counterclaims fail "to put Skypoint on notice [of] which

allegations are being made against which defendant." (Doc. #160, p. 7.) Specifically, Skypoint notes that the counterclaims do not assert any elements designed to pierce the corporate veil or allege that wrongful acts committed by either Skypoint or its shareholders can be imputed to the other. (Id.) Accordingly, Skypoint asserts that "there are no facts alleged, whatsoever, where Skypoint can discern whether the allegations being made are alleged to have been made by it, by Dreni, by Dreni on behalf of it, or by both Dreni and itself together." (Id.)

In responding to this argument, the defendants assert that Skypoint incorrectly assumes that the source of liability invoked by the counterclaims is derivative. (Doc. #162, p. 2.) Defendants argue that the counterclaims assert both Skypoint and Dreni are personally liable for the torts they personally committed. (Id.) Defendants then suggest Skypoint is also liable due to Dreni's actions, stating the following:

> It is also clear that Dreni performed these tortious acts, not only in his personal capacity, but also as the owner and managing member of Skypoint. The alleged acts were all performed in connection with Skypoint's involvement in "The Brave" and the subsequent fall-out between Skypoint and Counterclaim Plaintiffs.

(Id. p. 3.)

The Court finds the allegations in the counterclaims are sufficiently pled to put Skypoint on notice of the claims asserted against it. The counterclaims allege that (1) Skypoint is a

Florida limited liability company, (2) Dreni and his wife are the members of Skypoint, and (3) Dreni is the managing member.  (Doc. #152, p. 17.)  Under Florida law, a manager in a manager-managed limited liability company is an agent of the company for purposes of its activities and affairs.  § 605.04074(2)(b), Fla. Stat. Furthermore, acts of the manager bind the company under certain circumstances:

> (b) Except as provided in subsection (3), each manager is an agent of the limited liability company for the purpose of its activities and affairs, and an act of a manager . . . for apparently carrying on in the ordinary course of the company's activities and affairs or activities and affairs of the kind carried on by the company, binds the company unless the manager had no authority to act for the company in the particular matter and the person with whom the manager was dealing knew or had notice that the manager lacked authority.
>
> (c) An act of a manager which is not apparently for carrying on in the ordinary course of the limited liability company's activities and affairs or activities and affairs of the kind carried on by the company, binds the company only if the act was authorized by appropriate vote of the members.

§ 605.04074(2)(b)-(c), Fla. Stat.

The allegations in the counterclaims are analogous to those in Pelfrey v. Mahaffy, where the defendants filed counterclaims, including one for conversion, against Pelfrey and P3 Technologies LLC.  2018 WL 3110797, *1 (S.D. Fla. Feb. 7, 2018).  Pelfrey filed a motion to dismiss, arguing, *inter alia*, that the conversion claim failed to state a claim against P3 because all of the conduct described was alleged to have been committed by Pelfrey alone.

Id. at *2.  Citing the above Florida statute, the Southern District rejected the claim, stating:

> The Counterclaim alleges that P3 is an LLC founded by Pelfrey, and that Pelfrey "is the managing member of P3." The allegations throughout the counterclaim go on to describe Pelfrey's various actions taken on behalf of himself and P3 to advance the interests of P3. Pelfrey's conduct . . . is attributed to the LLC which he founded and accordingly I decline to grant Pelfrey's motion to dismiss P3 from the Conversion claim.

Id. at *4 (citation omitted).

The Court finds the reasoning in Pelfrey applicable to the current case.  Reading the allegations in the light most favorable to the defendants as the non-moving party, the counterclaims allege acts committed by both Skypoint and Dreni, and that the acts committed by Dreni were on behalf of Skypoint and related to the film-production dispute.  The Court finds this sufficient to meet the pleading requirements of Rule 8.  Accordingly, the motion is denied to the extent it seeks dismissal of the counterclaims.

## III.

As previously noted, Skypoint requests the Court strike ten paragraphs and two footnotes contained in the counterclaims. (Doc. #160, pp. 8-9.)  Skypoint argues the allegations therein are impertinent, irrelevant, immaterial, and/or scandalous. (Id. pp. 9-11.)  The defendants respond that all of the complained-of allegations are related to the controversy and do not contain

anything scandalous against Dreni or Skypoint. (Doc. #162, pp. 4-7.)

Having reviewed the allegations at issue, the Court finds none require the drastic remedy being sought by Skypoint because the allegations are relevant. For example, the counterclaims suggest Skypoint's attorney provided a portion of Dreni's funding for the film project and acted with Dreni to subsequently disrupt the project. (Doc. #152, pp. 23, 26-27.) While these allegations may reflect negatively on Skypoint, Dreni, or even Skypoint's attorney, the Court finds the allegations relevant to the factual background underlying the three counterclaims.

Similarly, the Court finds none of the allegations at issue are so "scandalous" as to require being struck. The defendants allege Dreni engaged in "extortionary" tactics when trying to obtain a refund of his investment, and that Dreni attempted to obtain a film role for an international model and became upset with the defendants when she was not hired. (Doc. #152, pp. 19, 24, 26.) These allegations are relevant to the underlying acts Dreni and Skypoint are alleged to have taken, as well as the defendants' allegation that Dreni acted with malicious intent. The Court is not persuaded by Skypoint's argument that the allegations imply Dreni engaged in "the criminal act of extortion" or "was the subject of an illicit affair." (Doc. #160, p. 10.)

Accordingly, it is now

**ORDERED:**

Plaintiff's Dispositive Motion to Dismiss and Motion to Strike Counterclaims (Doc. #160) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this __11th__ day of May, 2020.


_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies:
Parties of record