UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SKYPOINT ADVISORS, LLC.,

       Plaintiff/Counter
       Defendant,

v.                      Case No:  2:18-cv-356-JES-MRM

3 AMIGOS PRODUCTIONS LLC.,
BLACKBURNSTEELE LLC., ISSA
ZAROUI, and MARK CRAWFORD,

       Defendants/
       Counterclaimants.

_____

3 AMIGOS PRODUCTIONS LLC.,
BLACKBURNSTEELE LLC., ISSA
ZAROUI, and MARK C CRAWFORD,

       Third-Party
       Plaintiffs,

v.

DENIS DRENI,

       Third-Party
       Defendant.

_____

**OPINION AND ORDER**

    This matter comes before the Court on review of the parties' cross motions for summary judgment (Docs. ## 236, 240) on the Plaintiff's claims in the Amended Complaint (Doc. #93), the operative complaint. Responsive memoranda (Docs. ## 252, 253, 259) have been filled. For the reasons set forth, the motions are **DENIED.**

**I.**

This litigation arises from a dispute over monies provided by Skypoint Advisor LLC (Skypoint or Plaintiff) to Defendants 3 Amigos Production LLC (3 Amigos), BlackburnSteele LLC (BlackburnSteele), Issa Zaroui (Zaroui), and Mark Crawford (Crawford) (collectively, Defendants) for the filming, production, and release of a movie. Third-Party Defendant Denis Dreni (Dreni) is the managing member of Skypoint.

The Amended Complaint (Doc. #93) asserts the following claims: (1) violation of § 10(b) of the Securities Exchange Act of 1934 and corresponding Rule 10b-5 against all Defendants; (2) violation of Florida securities law against all Defendants; (3) fraud against all Defendants; (4) violation of the Florida Deceptive and Unfair Trade Practices Act against all Defendants; (5) breach of contract against 3 Amigos only; and (6) breach of fiduciary duty against 3 Amigos only.  All parties to the Amended Complaint now seek summary judgment in their favor as to all counts.[1]

**II.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material

---

[1] Pending summary judgment motions as to the Counterclaim and Third-Party Complaint are addressed in a separate Opinion and Order.

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). "'[I]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment.'" St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983) (finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

Cross motions for summary judgment do not change the standard. See Am. Bankers Ins. Grp. v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005). Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another; and summary judgment is inappropriate if disputes remain as to material facts. Id.; see also United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984) ("Cross-motions for summary judgment will not, in themselves, warrant the court in

granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed[.]" (citation omitted)).

## III.

The submissions of the parties have been voluminous (Docs. ## 236-1—14, 238-1—32, 252-1—73) but not always helpful.[2]   The following facts appear to be undisputed:

On or about February 2017, Skypoint and 3 Amigos entered into a Film Financing Agreement (the "Agreement").  (Doc. #93-1.)  The relevant portions of the Agreement include:

> WHEREAS, LLC [3 Amigos] is the Managing Member and the LLC has been established to produce, own and exploit a Motion Picture based on the script known as "LAZARAT BURNING," (the "Project")…
>
> ***
>
> 2. The Loan. "Lender" [Skypoint] hereby agrees to lend to the LLC the amount of fifty thousand USD ($50,000). The LLC promises to pay the Lender the principal amount of such Loan back in case the project does not go into production. In addition, in the event the Project goes partially into production and subsequently stops permanently or for a period

---

[2] Both parties provide incorrect citations, or no citations, to the record when providing their statements of undisputed/disputed facts.  Rather than provide a clean statement of undisputed facts, Skypoint scatters screen shots of purportedly undisputed documents through its briefing.  Some exhibits are in a foreign language without any translation.  Compilations of single-page excerpts from depositions are attached, without context and without signature pages or another form of authentication.  Many exhibits attached are not even cited in the statements of fact or the parties' legal discussions.

of no greater than ninety (90) days, any
monies not spent on production shall be
immediately returned to Lender. Any monies
already spent on project shall also be
returned to Lender in equal installments…

***

3. Distributions. The distribution from the
Project shall be made by the LLC as follows:

a) FIRST, for the payment of any front-end
deferrals of any costs of production, sales,
marketing and distribution of the Project [],
and subsequently any loans [];

b) SECOND, for the repayment of the Investors
principal, on a pro-rata basis, up to the
total amount invested by each Investor [];

c) THIRD, for the distribution to each
Investor and the LLC, until the aggregate
amount is distributed pursuant to the
following percentages:

- 60% to the Collective of Investors,
  inclusive of Lender, on a pro-rata basis,
  based upon their percentage of total
  Investment monies[];

- 40% to the LLC and/or its assignees.

***

5.1. Investor/Lender Acknowledgements. Each
Investor/Lender understands:

(a) That the distributions evidenced by this
Agreement constitute "securities" which have
not been registered under the Securities
Act…or any other state securities laws []
because the LLC is issuing these securities in
reliance upon the exemptions from
registrations…

***

14. Release Date. The international release
date of the Project will be on or about
November 30, 2017.

15. Delay. The Company reserves the rights of
delay between 3 to 6 months after the agreed
upon international release.

(Doc. #93-1.)  The parties generally agree that a movie went into

filming and production, and that William Kaufman (Kaufman) was

hired to direct and produce a movie.  Beyond that, a great number

of material facts are disputed.  The Court briefly summarizes each

parties' version of the relevant facts below.

### A.   Plaintiff's Version

Skypoint asserts it invested $50,000 with 3 Amigos pursuant

to the Agreement for production of the movie "Lazarat Burning".

When negotiating the Agreement, Skypoint and 3 Amigos discussed

financing, the film's budget, and distributions, among other

items. (Doc. #240, p. 3.)  During these negotiations and to secure

Skypoint's investment, Defendants made certain false promises and

statements to Skypoint about the film and its production.  (Id.)

The "Lazarat Burning" script is owned by scriptwriter Marco Balsamo

(Balsamo) (id. p. 4), and 3 Amigos has never owned the rights to

that script.  Rather, 3 Amigos received rights from Balsamo for a

script titled "The Brave" prior to entering into the Agreement

with Skypoint.  (Id. p. 6.)  "The Brave" was the movie that was

actually filmed and produced by 3 Amigos with Skypoint's funds.

(Id.)

At some point, Dreni went to Bulgaria, where filming was occurring, and realized that 3 Amigos was violating the Agreement by not filming and producing the agreed-upon movie. (Id. p. 12.) Dreni then requested that 3 Amigos return Skypoint's investment due to breach of the Agreement. (Id.) 3 Amigos refused to return the investment and sent Dreni insulting and offensive messages in response to his request. (Id. p. 40.) Although 3 Amigos released a movie, that movie was released late, in violation of the Agreement. Skypoint never received repayment or distributions from the movie. (Id. p. 49.)

### B.   Defendants' Version

Defendants assert they made no specific promises related to the film prior to or after the Agreement and Skypoint's investment of its funds. (Doc. #236, p. 6.) Dreni had five months to perform due diligence on 3 Amigos, with the assistance of counsel. (Doc. #252, p. 7.) After the parties reached the Agreement, Skypoint provided a $50,000 loan to 3 Amigos, which was less than 4% of the movie's budget. (Doc. #236, p. 6.) Skypoint's loan was not a passive investment because Skypoint and Dreni saw the Agreement as an entry into the film industry. (Id. pp. 3-4.) This was evidenced by Skypoint seeking a film credit for the movie, involving itself with actors, seeking other investors, being on the movie's set, evaluating whether 3 Amigos should seek legal recourse against an actor, and discussing product placement advertising in the movie.

(Id. pp. 4-6; Doc. #252, pp. 5-7, 10-12.)  Skypoint was also kept apprised throughout the filming and production process, including probable actor hires, a copy of a draft script for comments, and filming schedules.  (Doc. #252, pp. 4-5, 8.)

During the filming and production of the movie, 3 Amigos faced certain challenges, including the resignation of the movie's lead actor.  (Doc. #236 p. 5.)  The movie also developed over time to create a better final project, and such developments included script changes, changing the title of the film to "The Brave," and hiring new, more famous actors.  (Id. p. 6; Doc. #252, pp. 6, 8.)  Skypoint knew of these changes to the movie.  (Doc. #252, pp. 8-15.)  Despite these challenges, principal filming of the movie was completed on schedule and on budget.  (Doc. #236, p. 6.)

Prior to the movie being delivered to Kaufmann for post-production, Kaufman informed 3 Amigos that his company Throttle Films, which was contracted for post-production of the movie, had ceased operations.  (Doc. #252, p. 16.)  Kaufman assured 3 Amigos, however, that he would complete post-production, even if post-production would need to be delayed, and that he may bring in additional help from another company.  (Id.)  Media Mental was brought in to assist with post-production, but Kaufman remained the main point of contact.  (Id.)  Skypoint was kept apprised of these developments.  (Id. pp. 16-18.)

In late November 2017, Skypoint and Dreni, purportedly facing financial hardships, demanded their money back from 3 Amigos. (Id. p. 18.)  Dreni then proceeded to send threatening text messages and emails to Crawford and Zaroui, stating that if he did not receive his money back, he would take various actions against Defendants, including defaming them, filing complaints with the SEC and FBI, and suing them.  (Id. pp. 18-21.)  Dreni also interfered with Kaufman's post-production of the movie by offering Kaufman work on another movie at the same time, delaying the movie's ultimate release.  (Doc. #251, pp. 3-4.)  Despite this chaos, and after Skypoint filed this lawsuit, the movie premiered in October 2018 and has since been released on various streaming platforms.  (Doc. #252, p. 21.)

**IV.**

**A.   Counts I and II – Securities Fraud**

Counts I and II of the Amended Complaint assert violations of federal and state securities laws against all Defendants.  Count I asserts a federal securities claim pursuant to Section 10(b) of the Securities Exchange Act.  (Doc. #93, p. 32.)  Count II asserts a Florida state-law securities claim pursuant to Fla. Stat. § 517.301.  (Id. p. 36.)  Both sides seek summary judgment on both counts.

**(1)  Defendants' Motion**

Defendants argue that Skypoint cannot recover under federal or state securities law because the Agreement is not a "security." (Doc. #240.)  Skypoint argues otherwise.

The definition of "security" is the same under federal and Florida law.  As explained by the Eleventh Circuit:

> The Securities Act of 1933 defines a "security" to include many things, including an "investment contract."  15 U.S.C. § 77b(a)(1).    Courts have interpreted "investment contract" broadly to encompass many money-raising schemes.  Thomas Lee Hazen, 1 Treatise on the Law of Securities Regulation §§ 1:49–50, at 116–19, 124 (7th ed. 2016). The basic test for distinguishing an "investment contract" from other commercial dealings is "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others."  SEC v. W.J. Howey Co., 328 U.S. 293, 301 (1946). … We have "divided the Howey test into the three elements: (1) an investment of money, (2) a common enterprise, and (3) the expectation of profits to be derived solely from the efforts of others." SEC v. Unique Fin. Concepts, Inc., 196 F.3d 1195, 1199 (11th Cir. 1999) (internal quotation marks omitted).

Fedance v. Harris, 1 F.4th 1278, 1287 (11th Cir. 2021).  While the Agreement says that its distributions "constitute 'securities'" (Doc. #93-1, ¶ 5.1(a)), "[c]ourts 'examine the substance—the economic realities of the transaction—rather than the names that may have been employed by the parties.'"  Id. (quoting United Hous. Found., 421 U.S. at 851-52).   "'The meaning of "investment contract" is a question of law.'"  Bamert v. Pulte Home Corp., 445

F. App'x 256, 262 (11th Cir. 2011).  Florida has adopted this test for determining a "security" under Florida law.  <u>Farag v. Nat'l Databank Subscriptions, Inc.</u>, 448 So. 2d 1098, 1100 (Fla. 2d DCA 1984) (applying <u>Howey</u> test to Florida Securities Act claim).  Thus, Defendants must establish that at least one of the three elements cannot be satisfied.

"'Investment of money' means that the investor must commit his assets to an enterprise or venture in such a manner as to subject himself to financial loss." <u>Stowell v. Ted S. Finkel Inv. Servs., Inc.</u>, 489 F. Supp. 1209, 1220 (S.D. Fla. 1980) (citation omitted).  It is undisputed that Skypoint provided $50,000 to 3 Amigos for the filming, production, and release of the movie. Skypoint characterizes this as an "investment;" Defendants characterize this as a "loan."  Under either characterization, Skypoint provided $50,000 to 3 Amigos for production of the movie, which subjected Skypoint to a financial loss.  The first prong of the <u>Howey</u> test is satisfied.

"A common enterprise exists where the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties.'" <u>Alunni v. Dev. Res. Grp., LLC</u>, 445 F. App'x 288, 295 (11th Cir. 2011) (quoting <u>Eberhardt v. Waters</u>, 901 F.2d 1578, 1580 (11th Cir. 1990)).  "[T]he requisite commonality is evidenced by the fact that the fortunes of all investors are inextricably tied to the efficacy of the

promoter." S.E.C. v. Unique Fin. Concepts, Inc., 196 F.3d 1195, 1199 (11th Cir. 1999) (quotation omitted). Defendants sought investments from Skypoint and other third parties to film and produce the movie. The Agreement reflects that Skypoint may receive a distribution of profits, indicating its fortune is interwoven with and dependent on the movie's success. (Doc. 93-1, § 3.) This is sufficient to establish a common enterprise, and the second prong of the Howey test is satisfied.

"Under the third criteria of the Howey definition, the focus is on the dependency of the investor on the entrepreneurial or managerial skills of a promoter or other party." Gordon v. Terry, 684 F.2d 736, 741 (11th Cir. 1982) (citing cases). "An investor who has the ability to control the profitability of his investment, either by his own efforts or by majority vote in group ventures, is not dependent upon the managerial skills of others." Id. "'[T]he crucial inquiry is the amount of control that the investors retain under their written agreements.'" Bamert, 445 F. App'x at 262-63 (quoting Albanese v. Fla. Nat. Bank of Orlando, 823 F.2d 408, 410 (11th Cir. 1987)).

Defendants' motion primarily challenges this third prong, arguing that Skypoint's intense involvement with the film demonstrates that Skypoint was not "solely dependent" on the efforts of others to make a profit on his investment. (Doc. #236, p. 9.) Defendants point to Skypoint's active involvement in the

movie project, including translating contracts, seeking out other investors, initiating pitch meetings, staying on set, and researching lawyers for an actor dispute.  (Id.)

The record shows at least disputed issues of material fact which preclude determining as a matter of law that the third prong cannot be satisfied.  Defendants fail to cite any evidence demonstrating that Skypoint retained control or decision-making power over the movie project.  There is nothing in the Agreement that gives Skypoint such authority.  If anything, the Agreement demonstrates that Skypoint lacked control over its investment. (E.g., Doc. #93-1, § 4 ("the LLC has the sole right to distribute the Project…without the consent of any Investor or Lender).)  Even if actively involved in the film, Skypoint was dependent on Defendants' ultimate decision-making to receive profits on its investment.  Defendants have not shown that undisputed material facts establish that Skypoint had the ability to control the profitability of its investment, and therefore fail to show that the third prong of Howey cannot be satisfied.  Defendants' motion for summary judgment on Counts I and II is denied.

### (2)  Plaintiff's Motion

Skypoint's motion argues that the "undisputed facts" satisfy all elements of both the federal and state claims, and therefore judgment as a matter of law is appropriate.  (Doc. #240.) Defendants see it quite differently, as does the Court.

14

"To recover damages in a private securities-fraud action under § 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5, a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455, 460-61 (2013) (quotations and citations omitted). Claims brought pursuant to Fla. Stat. § 517.301 require: "'(1) a misrepresentation; (2) of a material fact; (3) on which the investor relied.'" In re Harris, 3 F.4th 1339, 1350 (11th Cir. 2021) (quoting Kashner Davidson Sec. Corp. v. Desrosiers, 689 So.2d 1106, 1107 (Fla. 2d DCA 1997). "Mixed questions of law and fact, such as questions of materiality, scienter, and reliance, involve assessments peculiarly within the province of the trier of fact." Merch. Cap., 483 F.3d at 766.

Skypoint has not carried its burden of demonstrating that the undisputed material facts warrant summary judgment. There are clearly a host of material facts in dispute which impact the elements of the causes of action, including what, if any, material misrepresentations were made to Skypoint. Skypoint's motion for summary judgment on Counts I and II is denied.

C.   **Count III – Fraud**

"Under Florida law, the elements of common law fraud are: (1) a false statement of fact; (2) known by the person making the statement to be false at the time it was made; (3) made for the purpose of inducing another to act in reliance thereon; (4) action by the other person in reliance on the correctness of the statement; and (5) resulting damage to the other person." Yormak v. Yormak, No. 2:14-CV-33-FTM-29CM, 2015 WL 2365772, at *3 (M.D. Fla. May 18, 2015) (quotation and citations omitted). "Generally, the issue of fraud is not properly the subject of summary judgment, because a court can seldom determine the presence or absence of fraud without a trial." Natarajan v. Paul Revere Life Ins. Co., 720 F. Supp. 2d 1321, 1330 (M.D. Fla. 2010) (citing Robinson v. Kalmanson, 882 So.2d 1086, 1088 (Fla. 5th DCA 2004)). "This is because the questions of actual misrepresentation, intent, knowledge, and reliance all turn on factual determinations, which are often based on circumstantial evidence." State Farm Mut. Auto. Ins. Co. v. Weiss, 410 F. Supp. 2d 1146, 1148 (M.D. Fla. 2006) (citations omitted).

Both Plaintiff and Defendants move for summary judgment on this claim based on what each party contends are the undisputed facts. As with the securities fraud claims, there are multiple material factual disputes concerning virtually all of the elements, including whether 3 Amigos made false statements or

16

misrepresentations to Skypoint.  As with most fraud cases, the questions of actual misrepresentation, intent, knowledge, and reliance in this case all turn on factual determinations which will be made based on circumstantial and conflicting evidence. Summary judgment is not appropriate for either party.[3]

### D.   Count IV – Florida Deceptive and Unfair Trade Practices Act

"A successful FDUTPA claim requires three elements: '(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.'"  Commodores Ent. Corp. v. McClary, 822 F. App'x 904, 913 (11th Cir. 2020) (quoting Dolphin LLC v. WCI Communities, Inc., 715 F.3d 1243, 1250 (11th Cir. 2013)).  "An unfair practice is 'one that offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"  N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc., 666 F. Supp. 2d 1299, 1310 (M.D. Fla. 2009) (quotation and citation omitted).  "Deception occurs if there is a 'representation, omission, or practice that is likely to mislead

---

[3] Defendants also argue that the claim as related to Zaroui and BlackburnSteele must be dismissed because neither spoke to Skypoint before Skypoint invested.  This argument is not well-taken.  Skypoint asserts multiple alleged misrepresentations made by Crawford, the sole member of BlackburnSteele, which is a member of 3 Amigos.  While Defendants argue that Dreni admitted during his deposition that he never spoke to Zaroui before Skypoint invested, the Court has reviewed Defendants' citations to the deposition in support of this argument and sees no admission by Dreni that he never spoke to Zaroui before investing.

the consumer acting reasonably in the circumstances, to the consumer's detriment.'" Id.

(1) **Defendants' Motion**

Defendants argue that Skypoint cannot recover under the FDUTPA because it was not a consumer engaged in a consumer transaction. (Doc. #236.) However, "[u]nder Florida law, a party need not be a consumer to bring a FDUTPA claim." Bluegreen Vacations Unlimited, Inc. v. Timeshare Termination Team, LLC, No. 20-CV-25318, 2021 WL 2476488, at *6 (S.D. Fla. June 17, 2021) (citation omitted); see also Fla. Stat. § 501.211 (any "person who had suffered a loss as a result of a violation" may recover). "While a consumer transaction is not required to bring a claim, demonstrating a consumer injury is required." Crmsuite Corp. v. Gen. Motors Co., No. 820CV762T02WFJAAS, 2020 WL 5898970, at *6 (M.D. Fla. Oct. 5, 2020). "[V]irtually any injury resulting from an unfair or deceptive practice occurring in trade or commerce is a 'consumer injury.'" Id. See also Fla. Stat. § 501.23(8) ("trade or commerce" is broadly defined to include the "sale, rental, or otherwise of…a thing of value.")

Considering this liberal standard, Skypoint has at least shown material albeit disputed facts which established a consumer injury under the FDUTPA by means of its investment into the movie. E.g., Hodges v. Monkey Cap., LLC, No. 17-81370-CV, 2018 WL 9686569, at *7 (S.D. Fla. Aug. 14, 2018) ("a violation of the securities

laws is a per se violation of FDUTPA"). Defendants' motion for summary judgment on the FDUTPA claim is denied.

### (2)  Plaintiff's Motion

Skypoint argues Defendants' undisputed conduct in relation to Skypoint's investment, particularly how Skypoint was treated after its investment and as an investor, was immoral and unethical. Skypoint cites various emails and text messages demonstrating Defendants' conduct, which it asserts evidences a violation of the FDUTPA and makes summary judgment appropriate. (Doc. #240, p. 40.) The messages to which Skypoint cites occurred after Skypoint demanded its money back and allegedly began threatening Defendants. (Id.)

Genuine disputes of material fact exist. The alleged conduct of all the parties is hotly contested. It will be up to a jury to review the documents, weigh the testimony of the witnesses, and decide whether Defendants' engaged in a deceptive act or unfair practice that caused Skypoint actual damages. Skypoint's motion on the FDUTPA claim is denied.

### E.  Count V – Breach of Contract

Skypoint brings this breach of contract claim against 3 Amigos only, and both parties move for summary judgment. "Under Florida law, there are three elements to a breach of contract claim: (1) the existence of a contract; (2) a material breach; and (3) damages resulting from the breach." Ulloa v. Fancy Farms, Inc., 762 F.

App'x 859, 867 (11th Cir. 2019) (citing Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009)).

There is no dispute that the Agreement exists.  The issue presented is whether 3 Amigos materially breached the Agreement. Neither party has carried its burden of demonstrating that there are no genuine disputes of material fact for trial.  Skypoint's motion and the 3 Amigos' motion on Count V are denied.

**F.   Count VI – Breach of Fiduciary Duty**

This claim is brought by Skypoint against 3 Amigos only. "[T]o establish a breach of fiduciary duty under Florida law, a plaintiff must prove three elements: the existence of a fiduciary duty, a breach of that duty, and that the plaintiff's damages were proximately caused by the breach." Med. & Chiropractic Clinic, Inc. v. Oppenheim, 981 F.3d 983, 989-90 (11th Cir. 2020) (citing Gracey v. Eaker, 837 So.2d 348, 353 (Fla. 2002)).  "To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel and protect the weaker party." Tardif v. People for the Ethical Treatment of Animals, No. 2:09-CV-537, 2010 WL 3860733, at *5-6 (M.D. Fla. Sept. 29, 2010) (quoting Bingham v. Bingham, 11 So.3d 374, 387 (Fla. 3d DCA 2009)).

**(1) 3 Amigos' Motion**

3 Amigos argues that summary judgment is warranted because Skypoint cannot establish the existence of a fiduciary

relationship between 3 Amigos and Skypoint.  3 Amigos' motion is premised on a finding that the Agreement is "an arms-length transaction between a creditor and debtor," i.e., that Skypoint's "loan" to 3 Amigos for the film was not an investment contract.

As discussed, supra, there are sufficient material facts which could establish that the Agreement is an investment contract, and not a creditor/debtor relationship as 3 Amigos contends. Taking the disputed facts in light most favorable to Skypoint, there could be a fiduciary relationship.  3 Amigos' motion as to Count VI is denied.

### (2)  Skypoint's Motion

Skypoint's motion argues that the undisputed facts demonstrate that 3 Amigos breached its fiduciary duty to Skypoint. Although Skypoint spends multiple pages citing fiduciary case law, Skypoint only contends that 3 Amigos "breached their fiduciary duties," and never informs the Court what duty (or duties) 3 Amigos breached.  (Doc. #240, pp. 45-57.)[4]  There are clearly disputes as to material facts which impact the resolution of this claim. Thus, Skypoint has not carried its burden of demonstrating that it is entitled to judgment as a matter of law on Count VI, and the motion is denied.

---

[4] Although a fiduciary relationship may exist, Skypoint must still prove duty, breach, proximate cause, and damages to succeed on this claim.  Med. & Chiropractic, 981 F.3d at 989-90.

Accordingly, it is now

**ORDERED:**

1.  Defendants' Motion for Summary Judgment is **DENIED.** (Doc. #236.)

2.  Plaintiff's Motion for Summary Judgment is **DENIED.** (Doc. #240.)

**DONE and ORDERED** at Fort Myers, Florida, this ___27th___ day of December, 2021.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record