UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SKYPOINT ADVISORS, LLC.,

    Plaintiff/Counter
    Defendant,

v.  Case No: 2:18-cv-356-JES-MRM

3 AMIGOS PRODUCTIONS LLC.,
BLACKBURNSTEELE LLC., ISSA
ZAROUI, and MARK C CRAWFORD,

    Defendants/
    Counterclaimants.

---

3 AMIGOS PRODUCTIONS LLC.,
BLACKBURNSTEELE LLC., ISSA
ZAROUI, and MARK C CRAWFORD,

    Third-Party
    Plaintiffs,

v.

DENIS DRENI,

    Third-Party
    Defendant.

---

**ORDER AND OPINION**

This matter comes before the Court on review of Counter-Defendant Skypoint Advisors, LLC's (Skypoint) Motion to Exclude Expert Testimony of Mark C. Crawford (Doc. #237) filed on August 11, 2021. Counterclaimants 3 Amigos Production LLC (3 Amigos), BlackburnSteele LLC (BlackburnSteele), Issa Zaroui (Zaroui), and Mark C. Crawford (Crawford) (collectively, Defendants or

Counterclaim Plaintiffs) filed a Response in opposition (Doc. #240) on August 25, 2021. For the reasons set forth below, the motion is **granted**.

### I.

This litigation arises from a dispute over monies provided by plaintiff Skypoint to defendants 3 Amigos, BlackburnSteele, Zaroui, and Crawford for the filming, production, and release of a movie (the Film). Third-Party Defendant Denis Dreni (Dreni) is the managing member of Skypoint. The three members of 3 Amigos are Zaroui, BlackburnSteele, and non-party Chad Pittman. Crawford is the sole member of BlackburnSteele.

Skypoint's operative pleading is a Third Amended Complaint, which asserts the following claims: (1) violation of § 10(b) of the Securities Exchange Act of 1934 and corresponding Rule 10b-5 against all Defendants; (2) violation of Florida securities law against all Defendants; (3) common law fraud against all Defendants; (4) violation of the Florida Deceptive and Unfair Trade Practices Act against all Defendants; (5) breach of the Film Financing Agreement against 3 Amigos only; and (6) breach of fiduciary duty against 3 Amigos only. (Doc. #93.) The operative First Amended Counterclaim sets forth three claims against Skypoint and Dreni, jointly and severally: (1) defamation, brought by all Counterclaim Plaintiffs; (2) violation of the Stored Communications Act, brought by 3 Amigos and Zaroui; and (3)

2

tortious interference with contract, brought by 3 Amigos only. (Doc. #152.)

### A.

A brief statement of the facts relevant to the current motion, which concerns only 3 Amigos' tortious interference with contract claim: On or about February 2017, Skypoint and 3 Amigos entered into a Film Financing Agreement (Doc. #93-1) to make and produce a certain Film. The parties generally agree that a movie went into filming and production, and that William Kaufman (Kaufman) was hired to direct and produce the Film. Beyond that, a great number of material facts are disputed.

Based on 3 Amigos' allegations, when the Film was in the post-production phase, 3 Amigos signed a contract with Media Mental in which Mental Media agreed to complete the edited Film no later than February 28, 2018. (Doc. #152, p. 35, ¶ 86.) Kaufman was "the main contact between Mental Media and 3 Amigos" and "he supervised all the services provided under the Mental Media/3 Amigos contract." (Id. p. 61 ¶ 62; p. 35, ¶ 88). 3 Amigos asserts that Skypoint and Dreni intentionally interfered with the Mental Media contract by causing Mental Media and Kaufman to fail to deliver the final version of the Film by the February 28, 2018 deadline. Instead, the final version was delivered in July 2018 and released in October 2018. (Id. p. 61, ¶ 65.) 3 Amigos alleges that, as a result of Skypoint and Dreni's intentional interference,

3

it "incurred significant expenses in connection with, *inter alia*, rescheduling the release of the Film and investor relations." (Id. p. 35, ¶ 89.) To support these damages, 3 Amigos intends to call Crawford as an expert to testify.

**B.**

Crawford prepared and provided an expert report opining that 3 Amigos' tortious interference with contract damages should be calculated based on lost profits and total $70,287. (Doc. #237-1, p. 5.) Crawford defines lost profits by the following formula:

> The Definition(s) of Lost Profits as defined by *Morones, S. (2017). Five Pillars of a Lost Profits Analysis*, which I believe properly states the definition:
>
> a) Lost Revenues – Avoided Costs + Extraordinary Costs = Lost Profits Before Interest
>
> b) Lost Profits Before Interest + Prejudgment Interest on Past Losses – Present Value Discount on Future Losses = Net Lost Profits

(Doc. #237-1, p. 3.)

Using this equation, Crawford determined that 3 Amigos' lost revenues and avoided costs were $0 because the Film's revenue, which was delayed due to Skypoint and Dreni's alleged tortious interference, is "too speculative in nature . . . to warrant a judgment for their loss." (Doc. #237-1, p. 3.) Crawford determined that the "extraordinary costs" component of his equation should be calculated using the costs associated with "staff time and related expenses" during the alleged interference

4

because the Film Financing Agreement between Skypoint and 3 Amigos allowed for the recovery of costs associated with enforcement and litigation. (Id. pp. 4-5.) Crawford calculated the extraordinary costs amount as $61,502 by multiplying: (1) US Government per diem rates in Russia and France, plus the US Government's daily consulting rate by (2) the number of "man-days lost" in Russian and France. (Id. pp. 3-5.) The extraordinary cost sum was then used to calculate net lost profits which, after interest, totaled $70,287. (Id. p. 5.)

Skypoint seeks to preclude Crawford's expert testimony pursuant to Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). (Doc. #237.) As discussed below, the Court agrees.

## II.

The admission of expert testimony is governed by Rule 702, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and

5

>     (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 contemplates that the district court serve as gatekeeper for the admission of expert testimony in order to ensure that any and all expert testimony is both relevant and reliable. Daubert, 509 U.S. at 589; Tampa Bay Water v. HDR Eng'g, Inc., 731 F.3d 1171, 1183 (11th Cir. 2013). "The Supreme Court did not intend, however, that the gatekeeper role supplant the adversary system or the role of the jury: vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." McDowell v. Brown, 392 F.3d 1283, 1299 (11th Cir. 2004) (marks and citations omitted).

In determining the admissibility of expert testimony under Rule 702, the Court applies a "rigorous" three-part inquiry. United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc). Expert testimony is admissible if (1) the expert is qualified to testify on the topic at issue, (2) the methodology used by the expert is sufficiently reliable, and (3) the testimony will assist the trier of fact. Rosenfeld v. Oceania Cruises, Inc., 654 F.3d 1190, 1193 (11th Cir. 2011) (citation omitted). The burden of laying the proper foundation for the admission of expert testimony "is on the party offering the expert, and the

6

admissibility must be shown by a preponderance of the evidence." Kilpatrick v. Breg, Inc., 613 F.3d 1329, 1335 (11th Cir. 2010) (quoting McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002)).  The admission of expert testimony is a matter within the discretion of the district court, which is accorded considerable leeway in making its determination.  Frazier, 387 F.3d at 1258.

"In order to maintain an action for tortious interference with contractual rights, a plaintiff must prove that a third party interfered with a contract by 'influencing, inducing or coercing one of the parties ... to breach the contract, thereby causing injury to the other party.'"  Abruzzo v. Haller, 603 So.2d 1338, 1339-40 (Fla. 1st DCA 1992) (quoting Cedar Hills Props. Corp. v. Eastern Fed. Corp., 575 So.2d 673, 676 (Fla. 1st DCA 1991)).  The elements of tortious interference with a contract include "damage to the plaintiff resulting from the third person's failure to perform."  Seminole Tribe of Florida v. Times Pub. Co., Inc., 780 So. 2d 310, 315 (Fla. 4th DCA 2001).  "[P]roof of actual damages is an element of a cause of action for tortious interference."  Imperial Majesty Cruise Line, LLC v. Weitnauer Duty Free, Inc., 987 So. 2d 706, 708 (Fla. 4th DCA 2008).

**III.**

**A.   Crawford's Qualifications**

The first requirement for the admissibility of expert testimony is that the expert is qualified to testify competently regarding the matters he or she intends to address. City of Tuscaloosa v. Harcros Chems., 158 F.3d 548, 563 (11th Cir. 1998). Rule 702 permits a person to qualify as an expert based upon knowledge, skill, experience, training, or education. Frazier, 387 F.3d at 1260-61; see also Anderson v. Techtronic Indus. N. Am., Inc., 2015 WL 12843836, *2 (M.D. Fla. Apr. 14, 2015) ("The qualification standard for expert testimony is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility.") (citation omitted).

Crawford asserts that he is qualified "as an expert witness in the area of economics and finance." (Doc. #237-1, p. 1.) The report describes his economics background, degrees, and history in the financial industry. (Id.) However, Crawford's report does not include a Curriculum Vitae, resume, or other document demonstrating his qualifications. And while the report states Crawford has not testified as an expert in any other case in the previous four years and has not authored any publications in the

previous ten years, there is no indication that Crawford has <u>ever</u> testified in court as an expert or ever authored any publications.[1]

Crawford intends to testify about the amount of damages caused by the alleged intentional interference with the Mental Media contract. As alleged, these damages were the "significant expenses in connection with . . . rescheduling the release of the Film and investor relations." (Doc. #152, p. 35, ¶ 89.) There is simply no record evidence demonstrating that Crawford has any expertise to testify on these damages. The Court finds that Crawford is not qualified to render an expert opinion on this matter.

Even if lost profits were included in the proper measure of damages and Crawford's adopted formula were correct, Crawford has not established meaningful qualifications in the areas of calculations of profits, revenues, or losses in general, or, importantly, in connection with the film industry. The Court finds, based on his background described in the report and the matters proffered by 3 Amigos' counsel, that Crawford is not even minimally qualified to give an expert opinion on the damages at issue in this case.

---

[1] Crawford has testified once before Congress in a matter unrelated to the topic at issue in this matter.

### B. Reliability of Crawford's Opinion

The second requirement, discrete and independent from the witness' qualifications, is reliability. Frazier, 387 F.3d at 1261. The Supreme Court has provided a non-exhaustive list of factors to guide courts in assessing the reliability of expert opinions: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." Kilpatrick, 613 F.3d at 1335 (citing Daubert, 509 U.S. at 593-94). Although these criteria are more applicable to assessing the reliability of scientific opinions, they "may be used to evaluate the reliability of non-scientific, experience-based testimony." Frazier, 387 F.3d at 1262 (citing Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999)). "Exactly how reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." Id.

Crawford's opinion is unreliable because he uses the wrong measure of damages. "In tort actions, the measure of damages seeks to restore the victim to the position he would be in had the wrong not been committed." GG Inv. Realty, Inc. v. S. Beach Resort Dev., LLC, 3D20-1033, 2022 WL 39085, at *4 (Fla. 3d DCA Jan. 5, 2022)

10

(quoting Ashland Oil, Inc. v. Pickard, 269 So. 2d 714, 723 (Fla. 3d DCA 1972)). The gist of the tortious interference with contract claim is that the final version of the Film was due by February 28, 2018, but was not delivered until July 2018,[2] because of Skypoint or Dreni's intentional interference. Thus, for those (at most) 153 days, 3 Amigos did not have the use of the final version of the film. That means that the amount of money which would restore 3 Amigos to the position it would have been in had the wrong not occurred is the damage from those 153 days. In this type of fact pattern, loss-of-use is the proper measure of damages. B&B Tree Services, Inc. v. Tampa Crane & Body, Inc., 111 So. 3d 976, 978 (Fla. 2d DCA 2013); Lucas Truck Serv. Co. v. Hargrove, 443 So. 2d 260, 263 (Fla. 1st DCA 1983).

Lost profits, although not normally available because they are too speculative, may be recoverable as a component of loss-of-use damages if the lost profits are established with a reasonable degree of certainty:

> The general rule is that anticipated profits of a commercial business are too speculative and dependent upon changing circumstances to warrant a judgment for their loss. But the rule is not an inflexible one, and if profits can be established with reasonable certainty, they are allowed. Lost profits are typically

---

[2] Neither the First Amended Counterclaim nor Crawford's report provide the actual day in July that the Film was delivered.

11

>proven by one of two methods: (1) the before and after theory; or (2) the yardstick test.

<u>Devon Medical, Inc. v. Ryvared Medical Inc.</u>, 60 So. 3d 1125, 1128 (Fla. 4th DCA 2011).

Almost nothing about Crawford's opinion demonstrates reliability in connection with establishing lost profit damages for the tortious interference with contract claim. The only portion of the report which can be construed as addressing the damages for this claim – "significant expenses in connection with . . . rescheduling the release of the Film and investor relations" (Doc. #152, p. 35, ¶ 89) – is the "Extraordinary Cost Component" of Crawford's equation. (Doc. #237-1, pp. 3-4.) While Crawford states that this component is calculated with reasonable certainty, nothing in the report demonstrates that is true. For example, for reasons unstated in the report, Crawford finds 40 extra "man-days" lost in France, 14 extra "man-days" lost in Russia, and then uses U.S. Government per diem rates to come up with an extraordinary cost number. He does not explain what (or who) the "man-days lost" represents. He does not explain why he chose US per diem rates in Russia and France. He does not explain how he determined the number of man-days lost.[3]

---

[3] The "number of days lost" also conflicts with previous statements in Crawford's report. Crawford first states that "the period of time impacted by Dreni's tortious interference begins in February 2018 and extends through the release of the film in Russia on November 14, 2019." (Doc. #237-1, p. 2.) But, when making his

12

Moreover, Crawford does not explain why he used the lost profit equation he decided to use, the validity of it, whether it is accepted in the field, the equation's rate of error, or anything else that would tend to show its reliability. Instead, he merely states that "the calculation uses the following principals [sic] in line with *The Daubert* test for admissibility of expert testimony." (Id. pp. 2-3.) Crawford's report fails to demonstrate any reliability and his "expert" opinion must be excluded.[4]

### C. Whether Crawford's Opinion Assists the Trier of Fact

The third requirement for admissibility is that the expert testimony must assist the trier of fact. "[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Rosenfeld, 654 F.3d at 1262-63. "This condition goes primarily to relevance." Daubert, 509 U.S. at 591. Although testimony concerning 3 Amigos' damages is certainly relevant, Crawford's expert opinion will not assist the trier of fact because it is unreliable, incorrect in parts, and will confuse the trier of fact.

---

calculation, and without any explanation, Crawford concludes that the number of man days lost in France is 40 and days lost in Russia is 14. (Id. p. 4.)

[4] In the Response, 3 Amigos argues the reliability of Crawford's lost profits calculation by citing to information and articles about the equation used by Crawford. 3 Amigos does not analyze, describe, or attach these sources to the Response. Crawford also did not cite or discuss these sources in his report.

13

In sum, 3 Amigos has failed to show, by a preponderance of the evidence, that Crawford's "expert" opinion is admissible. His testimony as an expert will be excluded from trial.[5]

**IV.**

In their Response to the Motion, 3 Amigos make three alternative requests (Doc. #244, p. 8), which the Court considers, and denies, in turn.

First, 3 Amigos requests that Crawford be permitted to express this same opinion as a lay witness to reduce any prejudice. A person (i.e., Crawford) with an inadmissible "expert" opinion cannot simply give the same opinion by referring to himself a lay person. 3 Amigos' first request is denied. Even so:

> Under Federal Rule of Evidence 701, a lay witness may offer opinion testimony if the testimony is '(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" United States v. Estrada, 969 F.3d 1245, 1270-71 (11th Cir. 2020) (quoting Fed. R. Evid. 701). "Notably, Rule 701 does not prohibit lay witnesses from testifying based on particularized knowledge gained from their own personal experiences." United States v. Jeri, 869 F.3d 1247, 1265 (11th Cir. 2017) (internal quotation marks omitted). Generally, "an owner of property is competent to testify regarding its value." Neff v. Kehoe, 708 F.2d

---

[5] Because Crawford's expert opinion is excluded on Daubert principles and Fed. R. Evid. 702, it is unnecessary to consider Skypoint's other arguments for exclusion.

> 639, 644 (11th Cir. 1983) (internal quotation marks omitted). However, when an "owner bases his estimation solely on speculative factors," courts may exclude the owner's testimony. Williams v. Mosaic Fertilizer, LLC, 889 F.3d 1239, 1250 (11th Cir. 2018) (internal quotation marks omitted).

Omni Health Sols., LLC v. Zurich Am. Ins. Co., 19-12406, 2021 WL 2025146 (11th Cir. May 21, 2021). At trial, Crawford may or may not meet the qualifications for lay opinion testimony.

Second, 3 Amigos requests that Skypoint's motion be denied as untimely because Crawford disclosed his expert opinion in December 2020. However, per the Fifth Amended Case Management and Scheduling Order, Daubert motions were due on August 11, 2021. (Doc. #229.) Skypoint's motion, filed on that day, was timely.

Third, 3 Amigos requests that if Skypoint's motion is granted, it be granted leave to secure a replacement expert. 3 Amigos' expert disclosures were due December 21, 2020. (Doc. #191.) 3 Amigos has not shown good cause to modify that scheduling order or allow leave to retain a replacement expert. E.g., McCool v. Bridgestone/Firestone N. Am. Tire, LLC, No. 02-20 969-CIV, 2006 WL 8435316, at *4 (S.D. Fla. Feb. 13, 2006) (quoting Weisgram v. Marley Company, 528 U.S. 440, 455-56 (1990)) ("'Since Daubert, moreover, parties relying on expert evidence have had notice of the exacting standards of reliability such evidence must meet. It is implausible to suggest, post-Daubert, that parties will

15

initially present less than their best expert evidence in the expectation of a second chance should their first try fail.'").

Accordingly, it is now

**ORDERED:**

Skypoint's Motion to Exclude the Expert Testimony of Mark C. Crawford (Doc. #237) is **GRANTED**.

**DONE and ORDERED** at Fort Myers, Florida, this __15th__ day of February, 2022.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

16